STEPHEN B. COHEN, in behalf of himself and all other members of a class known as keyholders of PLAYBOY CLUBS INTERNATIONAL, INC., Plaintiff-Appellant, *v.* PLAYBOY CLUBS INTERNATIONAL, INC. *et al.,* Defendants-Appellees.

(No. 57581;

First District (3rd Division)—April 18, 1974.

A. Bradley Eben and Edward W. Barrett, both of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Warren K. Smoot and Paul J. Bargiel, Assistant Attorneys General, of counsel), for appellee George E. Mahin.

Neil H. Adelman, of Devoe, Sharur, Krupp, Miller, Adelman & Hamilton, of Chicago, for appellee Chicago Playboy Club, Inc.

Mr. JUSTICE MEJDA delivered the opinion of the court:

An action for declaratory judgment, accounting and injunctive relief was commenced in the circuit court of Cook County by plaintiff, individually as a keyholder, and on behalf of all keyholders similarly situated,

against Playboy Clubs International, Inc., and the Playboy Club of Chicago, Inc. (hereinafter referred to as Playboy defendants). George E. Mahin, Director of Revenue, was named as a necessary defendant. The complaint challenged the validity of the collection and payment of the Illinois Use Tax and the Retailers' Occupation Tax by the Playboy defendants to the State of Illinois on a separate 15% mandatory service charge which was added to customers' bills for the purchase and consumption of food and beverages served in the Playboy Clubs. Playboy defendants filed answers and counterclaimed against the defendant Director of the Department of Revenue of Illinois. Plaintiff and the Playboy defendants each filed motions for summary judgment. The circuit court granted the motion of Playboy defendants and denied the motion of plaintiff, and held that the service charge was a part of the total selling price of food and beverages and was therefore subject to tax.

Plaintiff's appeal from the above order of the circuit court was originally filed in the Appellate Court, First District. On April 20, 1971, the appeal was transferred to the Supreme Court of Illinois upon motion of defendant Mahin for the reason that this was a case involving "revenue" within the meaning of the then Supreme Court Rule 302(a). The appeal was subsequently transferred back to this court for disposition.

Although several sub-issues are raised on appeal, the central issue presented for review is whether the 15% mandatory service charge separately stated on a bill for food and beverages is properly taxable under either the Illinois Use Tax or the Retailers' Occupation Tax Act.

The pertinent facts are not in dispute. Defendant Chicago Playboy Club, Inc., an Illinois corporation, is a restaurant and night club operated under a franchise from defendant Playboy Clubs International, Inc., a Delaware corporation. George E. Mahin, defendant, is the Director of the Department of Revenue of the State of Illinois.

Plaintiff and the class of keyholders he represents purchased tangible personal property (primarily food and beverages) at retail from the Playboy defendants from time to time since May 1, 1967. Since that date to the time of filing the instant complaint, a 15% mandatory service charge was separately stated on and added to all checks or bills of patrons who purchased food and beverages for on-the-premises consumption. The tax paid by Playboy defendants to the State of Illinois was computed upon the "total bill" which was comprised of the sub-total charges for food and drink, together with a separately stated "service charge 15% includes gratuities." Food and beverages are served to the patrons exclusively by female employees called "bunnies." All sums col-

lected as and for Illinois State tax on these bills are remitted to the Department of Revenue less, when applicable, the 2% discount permitted by law.

Tipping is not prohibited by defendant Chicago Playboy Club. Prior to June 16, 1969, Chicago Playboy paid to each "bunny" as compensation, in addition to hourly wages, only a portion of the 15% service charge paid by her customers upon weekly gross sales in excess of $550. After June 16, 1969, Chicago Playboy paid compensation, in addition to an hourly wage, equal to at least the 15% service charges on her checks.

On March 2, 1967, in response to an inquiry by defendant Chicago Playboy, the Illinois Department of Revenue issued a letter that "* * * the so-called service charge will be considered to constitute an increase in the taxable amount of the bill" if all of the following conditions are not met: "(1) Tipping is in fact prohibited; (2) the service charge is in fact stated separately on each bill; and (3) all of the proceeds of the service charge are in fact turned over to the employees who would normally have received tips had the service charge policy not been introduced." On October 1, 1969, counsel for defendant Chicago Playboy received a letter from the Department of Revenue advising that the requirement that tipping be prohibited had been deleted as a requirement from the Department's letter of March 2, 1967.

Prior to the trial, defendant Director answered certain interrogatories propounded to him by defendant Chicago Playboy as follows:

> "The 15% service charge will not be subject to the tax if all of the following conditions are met: (1) the service charge is in fact stated separately on each bill; and (2) all of the proceeds of the service charge are in fact turned over to the employees who would normally have received tips had the service charge policy not been introduced.
>
> If both of the above conditions are not met, then the so-called service charge will be considered to constitute an increase in the taxable amount of the bill."

The Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 440 *et seq.*) and the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439 *et seq.*) are basically similar in their provisions with the exception that the former provides for the imposition of a tax upon persons engaged in the business of selling tangible personal property at retail (a tax upon the occupation of selling) and the latter imposes a tax upon the privilege of using in Illinois tangible personal property purchased at retail from a retailer (a tax upon the use of property). The tax is imposed at a fixed rate of either the gross receipts from sales of tangible personal property (Retailers' Occupation Tax Act) or the selling price

of such property (Use Tax Act). Under the former Act "gross receipts" means the total selling price of the tangible personal property sold. Under both the Retailers' Occupation Tax Act and the Use Tax Act, the "selling price" or the amount of sale means "the consideration for a sale valued in money   *   *   *   without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever   *   *   *." (Ill. Rev. Stat. 1971, ch. 120, pars. 440 and 439.2.)

■■   No tax is imposed under either of the above Acts upon the business of providing entertainment. *Massell v. Daley* (1949), 404 Ill. 479, 89 N.E. 2d 361.

Plaintiff maintains that the service charge is not a part of the selling price as defined above because (1) the service charge, as stated separately on each bill, constitutes a gratuity; or (2) the service charge as stated is a charge for entertainment which is not taxable.

■   In *Snite v. Department of Revenue* (1947), 398 Ill. 41, 74 N.E.2d 877, the taxpayer sought a refund of taxes paid pursuant to the Retailers' Occupation Tax Act. The taxpayer was organized as a golf and country club. Members purchased food and drink which were served at the bar or in the restaurant on the premises. Taxpayer sought a refund of taxes paid on such sales, claiming that since he was primarily engaged in the business of furnishing services in the nature of conducting a social organization and furthering outdoor sports, the receipts from the sales of food and drink were non-taxable inasmuch as such sales were merely incidental to the business of furnishing the above service. The supreme court held otherwise, stating at page 46:

> "If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail, and the tax which he pays for the privilege of engaging in such business is measured by the price which the purchaser pays for the article and the service incident thereto."

The court specifically held that the taxpayer was engaged in the occupation of selling tangible personal property at retail and was consequently liable for the payment of taxes on such sales.

There is no doubt that the taxpayer in the case before us is engaged in the occupation of selling tangible personal property at retail. Plaintiff contends that the separately stated service charge constitutes a payment by the customer for entertainment. In the alternative, he contends that the Playboy defendants are engaged in the business of furnishing customers with the services of the "bunnies." In his brief in this court plaintiff

alleges that the "distinctively-dressed female employees" (the bunnies) who serve the food and beverages may furnish entertainment by their appearance alone. For the sake of argument, we may assume that the novel or distinctive appearance of these female employees affords some sort of entertainment. Nevertheless, the charge is designated a "service charge" and is presumably made for the services rendered rather than for the "entertainment" furnished by the appearance of the female employees. The charge is a percentage of the bill for food and drink. The female employees, regardless of their distinctive dress, serve the food and refreshment to the customers. No charge is made for the "entertainment" furnished by the appearance of these employees if the customer does not purchase food and drink.

Plaintiff cites *Miller v. Department of Revenue* (1958), 15 Ill.2d 323, 155 N.E.2d 12, for the proposition that a taxpayer who makes a separate charge for entertainment may deduct the amount of such charges from the gross receipts from sales of food and drink. The court did state that the charge was deductible *if* it was to be paid *regardless of whether the customer ordered refreshments.* In that case, however, the cost of entertainment was denied as a deduction from gross receipts. There the sole charge to the customer was the price of food and beverages. Plaintiffs were night-club owners who sold food and drink and provided entertainment. No separate charge for entertainment was made although the price of the food and beverages was inflated to cover such costs. The court, at page 325, made particular note that even though no separate charge for entertainment was made,

> "They sell only food and beverages, and the customer pays nothing for the entertainment as such. He is entitled to enjoy it regardless of the amount he pays for food or drinks. That amount is governed entirely by the type and quantity of food and beverage ordered, and has no relationship to the entertainment he receives. Under such circumstances the plaintiffs' cost of entertainment differs in no material respect from the expense of providing recorded music, television, a piano player, attractive decorations, or other inducements to patronage. Such items are simply part of the costs of conducting the business of selling food and beverages at retail, and the fact that their amount makes it necessary to charge seventy-five cents, rather than thirty-five cents, as the price of a drink is of no significance in determining the nature of the sales. * * * It is clear that the tax must be computed on plaintiffs' entire gross receipts, without deduction for costs of entertainment. There were no sales of entertainment but only of food and beverages."

In the instant case, the customer is charged and pays for the food and beverage and a separately stated service charge. This service charge is a fixed percentage of the total price of the food and beverage. The customer is entitled to enjoy the "entertainment" whether or not he purchases any food or drink. The service charge bears no relationship to the "entertainment" he receives but is determined solely by the price of the food and beverages he purchases. If any portion of the service charge could be considered as payment for entertainment, such entertainment at most is supplied as an incident or inducement to patronage. The charge for entertainment, even though separately stated, must be directly related to the amount of entertainment furnished to and received by each customer. Where each customer pays a charge in proportion to the food and drink ordered and not in proportion to the entertainment received, whether or not the charge is separately stated, such a charge must be included in the gross receipts which are subject to the tax. See *Miller. v. Dept. of Revenue, supra,* 327.

The court in *Miller* reiterated the proposition that if the thing sold is personal, professional or other service and not tangible property, the receipts therefrom cannot be included in measuring the tax. In the case before us the service rendered—the delivery of food and drink by "bunnies"—is "incidental to and an inseparable part of the transfer to the purchaser of the article sold, * * *." (*Snite v. Department of Revenue,* 398 Ill. 41, 46.) The substance of the transaction is clearly not the transfer of the article but the article itself. The cost of such transfer of tangible property, whether separately stated or included in the price of the item sold by way of a 15% mark-up, cannot be deducted from the "selling price" of the article in computing the amount of tax due the State of Illinois.

Plaintiff also argues that the Playboy defendants' segregation of the service charge from the price of food and drink is contrary to the public policy of the State of Illinois. He alleges that the inclusion of the service charge in the selling price, although separately stated, constitutes deceptive practices by the Playboy defendants in violation of several Illinois statutes. We are not here concerned with the Playboy defendants' potential liability for untrue, misleading or deceptive activities with respect to the separately stated service charge. Our concern is focused exclusively upon defendants' tax liability for such charges.

Finally, plaintiff maintains that the separately stated service charge which specifically states "includes gratuities" is in effect a tip or gratuity. This argument is without merit. The service charge, although a fixed percentage of the bill, is mandatory. The customer has no discretion as to the decision to pay or not to pay or the amount of the payment. He

may or may not leave an *additional amount* as a gratuity. If he does, *that* amount is within his personal discretion. However, the service charge is not in any sense gratuitous. See *Beaman v. Westward Ho Hotel Co.* (1960), 89 Ariz. 1, 4—5, 357 P.2d 327, 329.

In *Youngstown Club v. Porterfield* (1970), 21 Ohio St.2d 83, 255, N.E.2d 262, the Supreme Court of Ohio held that a mandatory 15% service charge imposed by a club on the price of food and drink was subject to Ohio sales tax. The court reasoned, at page 264:

> "The fact that the service charge is somewhat segregated from the charge for food and drinks, and will eventually pass to the waiters, does not make that labor cost any different from the amount for fixed labor costs which are included in the price for food and drinks."

In the case before us, during the period of time in question, the Playboy defendants were obligated, due to union contracts, to pay either a portion or all of the 15% service charge to the female employees who served customers. The fact that the cost to the Playboy defendants was not a predetermined or fixed cost, in the sense of a definite amount, but rather was determined as a percentage of the price of food and drink, does not render the service charge any less than a cost to the Playboy defendants. We note that 12 other jurisdictions, including California, District of Columbia, Iowa, Maryland, Michigan, Minnesota, North Carolina, Rhode Island, South Carolina, Virginia, Washington, and Wisconsin, have taken the same position, at least with respect to rules and regulations promulgated by those states.

For the above reasons, we hold that the mandatory service charge, as separately stated on the customers' bills, is includible within and not deductible from the selling price of food and drink sold by the Playboy defendants. Such charges are therefore taxable under the Retailers' Occupation Tax Act and the Use Tax Act. The judgment of the trial court is affirmed.

Affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.