BIG FOOT COUNTRY CLUB, Appellant, v. DEPARTMENT OF REVENUE, Respondent.

*No. 552 (1974). Submitted under sec. (Rule) 251.54 October 30, 1975.—Decided December 10, 1975.*
(Also reported in 235 N. W. 2d 696.)

For the appellant the cause was submitted on the brief of *Godfrey, Neshek, Worth & Howarth, S. C.,* of Elkhorn.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *E. Weston Wood,* assistant attorney general.

CONNOR T. HANSEN, J. The dispositive issue raised on this appeal is whether the 15 percent service charge added onto the bills for the purchase of all food and drink by the members of the appellant, and which is distributed directly to the waitresses, busboys and other help by way

of year-end bonuses, is includable within the appellant's gross receipts and is thus subject to the Wisconsin sales tax imposed by sec. 77.52, Stats.

The case was submitted to the commission and to the circuit court on the following stipulated facts:

The appellant is a private club which, pursuant to the bylaws of the club, adds a 15 percent service charge to all meal and bar charges incurred by the club's customers. Thus, if the total price for a meal is $5, the total charge to the appellant's customer is $5.75. Since the appellant does not deal in cash, all such charges are signed and billed monthly directly to the customer. The membership of the club is fully aware of the 15 percent service charge add-on required by the club's bylaws.

The moneys received from the 15 percent added charge are distributed in their entirety to waitresses, busboys, and other service help, excluding cooks, in the form of year-end bonuses.

Since 1962, when the selective sales tax law went into effect, to the present, the policy of the department has been to include such mandatory charges as the 15 percent involved in this case in taxable gross receipts. Tips or other payments which are wholly at the discretion of the customer have, under the department's policy, never been included in taxable gross receipts.

The tax in issue in this case, $2,040, resulted from the application by the department of the four percent sales tax to the mandatory 15 percent service charge added to all meal and bar purchases at the club during the years in question.

Sec. 77.52, Stats., provides that for the privilege of selling certain tangible personal property at retail, ". . . a tax is hereby imposed upon all retailers at the rate of 3% of the gross receipts from the sale, lease or rental of tangible personal property . . . sold, leased or rented at retail in this state on or after February 1, 1962; but beginning on September 1, 1969 the rate of the tax hereby imposed shall be 4%."

By sec. 77.52 (1) (a) 7, Stats. 1967, meals and beverages for human consumption are included among the described items of tangible personal property referred to in the above statute.

"Gross Receipts" as used in the statute are defined by sec. 77.51 (11) (a), Stats., to include:

". . . the total amount of the sale . . . price . . . without any deduction on account of the following:
"1. The cost of the property sold;
"2. The cost of the materials used, *labor or service costs,* interest paid, losses or any other expense;" (Emphasis supplied.)

Furthermore, sec. 77.51 (11) (c), Stats., specifies that "gross receipts" includes:

"1. All receipts, cash, credits and property except as provided in par. (b) 3.
"2. Any services that are a part of the sale of tangible personal property."

The exception provided in par. (b) 3 is inapplicable here.

The trial court concluded that the 15 percent mandatory service charge imposed by the appellant constituted part of its taxable gross receipts under the statutory provisions as quoted above. However, as the appellant correctly notes, when a case is submitted on stipulated facts and when the issues decided by the tax appeals commission and the circuit court are questions of law, this court does not give any special weight to the trial court's conclusions. *Recht-Goldin-Siegal Construction v. Department of Revenue* (1974), 64 Wis. 2d 303, 219 N. W. 2d 379. *See also: National Amusement Co. v. Department of Revenue* (1969), 41 Wis. 2d 261, 163 N. W. 2d 625. Thus, the issue presented is one of statutory construction for this court applying its own previously established rules of construction.

We conclude the trial court, department and commission erroneously considered this 15 percent service charge

to be part of the gross receipts of the appellant country club. Although this court accords great weight to the interpretation placed on a statute by the administrative agency charged with the duty of applying such statute, construction of a statute by the state agency dealing with its own power is not binding on the court, *Nekoosa-Edwards Paper Co. v. Public Service Comm.* (1959), 8 Wis. 2d 582, 99 N. W. 2d 821, nor are we bound by an erroneous construction of a statute by the administrative agency. *Johnson v. Chemical Supply Co.* (1968), 38 Wis. 2d 194, 156 N. W. 2d 455.

The statute defining gross receipts for sales tax purposes as it relates to the factual situation presented by this case has been interpreted by the department of revenue Technical Information Memorandum (S–48) which, as quoted in the briefs, provides:

"(g) A customer tip which is given directly to an employee in cash or which is added by the customer to his bill, which amount is then turned over in full to the employee is exempt from the sales tax, if the amount of such tip is wholly in the discretion or judgment of the customer. (However, an amount of flat percentage, whether designated as a tip or as a service charge, that is added to the price of meals pursuant to a requirement of the seller furnishing such meal is a part of the selling price of such meals and is subject to the tax regardless of whether the amount or flat percentage may subsequently be paid over in part or in whole by the seller to his employees)."

The 15 percent service charge is mandatorily added to the bill of each member pursuant to club rules adopted by the membership. Therefore, we conclude it is not includable within the gross receipts of the appellant since it is not a labor or service cost as that term is used in sec. 77.51 (11) (a) and (c), Stats. The record before us is unfortunately silent on several important points which, although not essential for our decision, would, had they been included, have simplified and expedited our

consideration of this case. For example: The record does not indicate what sanctions, if any, are applied to a member who refuses to pay this 15 percent added-on service charge; nor does the record indicate whether a member can increase the 15 percent service charge; nor does the record reveal if any of the 15 percent service charge is used to bring the service employees' wages up to the minimum wage level (presumably none is since according to the stipulated facts, this 15 percent service charge is accumulated and distributed in the form of year-end bonuses to the service personnel). Nor does the record reveal what formula is used to distribute this bonus money to the respective service employees who share in its distribution. The extra amount of the accumulated service charge is paid out to the employees as a bonus in lieu of gratuities—not as a weekly or monthly supplement to their wages. There is nothing in this record to suggest that the prices the appellant charges its members, which include service and labor costs, are in any way affected or offset by this year-end bonus. Although it is clear from the stipulated facts that the prices charged affect the amount of the bonus, we cannot say from the record before us whether the 15 percent service charge affects the costs of labor and service and is thus reflected in the price of food and beverages charged by the appellant.

This would be a different case if the record showed that the bonus was used to bring the wages paid to service help up to a minimum wage level or was used to make the total yearly wages paid to the club's service employees competitive with the wages paid to other service employees in similar employment in the area. This is not the situation since the record merely indicates the 15 percent service charge collected is paid out as a bonus—it is not paid as a supplement or a means of bringing wages up to the minimum level.

This mandatory 15 percent add-on service charge is a mere codification by the club's bylaws of the social custom of tipping. Without this bylaw, the members undoubtedly would tip a percentage approaching 15 percent of their bill anyway, out of social custom. It is conceded that this tip would not be subject to the sales tax. So, too, the 15 percent service charge should not be subject to the sales tax. Both are paid to the service employees and the element of discretion as to whether to leave 15 percent or not is essentially the same. Without the bylaw imposing the 15 percent service charge, the members' discretion to leave a 15 percent tip would be constrained by social custom. The social custom in this case has merely been transformed into a club bylaw. The members of the appellant collectively exercised their discretion and adopted the bylaw requiring the 15 percent service charge. This 15 percent is a reasonable amount and corresponds to the usual amount left by the general public in public restaurants. The members, if they chose, could by simply amending the bylaws of the club, again exercise their collective discretion and increase or decrease the amount to be added on their bills. Although this 15 percent is called a service charge, it is more appropriately viewed, under the circumstances of this case, as a gratuity or tip for the service employees. As such, it is not part of the gross receipts of the appellant.

This result is consistent with other states' decisions in similar cases. For example, in *St. Paul Hilton Hotel v. Commissioner of Taxation* (1974), 298 Minn. 202, 214 N. W. 2d 351, the Minnesota Supreme Court was confronted with the question of whether that state's sales tax could be imposed upon a mandatory 12 percent service charge added on by a hotel to the price of banquet meals served in the hotel. The 12 percent was separately stated on the customer's bill and was distributed to the service employees in its entirety with no part of such service

charge going to the hotel as operating revenue. The Minnesota court viewed the issue to be whether the service charge for banquets, as distinguished from the tip paid by an individual diner, was deductible from the gross receipts of the sale under the Minnesota statute which, unlike ours, provided that ". . . A deduction may be made for charges for services that are part of the sale . . . only if the consideration for such charges is separately stated." Minn. Stats. 297A.01, subd. 8. The Minnesota statute was interpreted by a regulation adopted by the commissioner of taxation that was, with minor exceptions, identical to Technical Information Memorandum (S–48) quoted above. The Minnesota court held that such service charges, since they were separately stated as required by the statute, could not be included in the hotel's gross receipts for sale tax purposes and that the regulation was inconsistent with the statute. More important for our consideration of the instant case, the Minnesota court went on to state:

"The purported distinction between discretionary 'tips' and mandatory 'service charges' squares neither with the statute *nor familiar customary meaning in the market place.* The 'tip' following a meal in, say, a fine restaurant is so mandated by social custom, even as to a percentage of the bill, that it is for all practical purposes as much an expected 'fee' for service as it is a 'present' expressing appreciation for being served. Testimony in the record establishes that the mandatory service charge has evolved as a convenient substitute for the voluntary tip, a practice accommodated by the general language of the statute." *Id.* at pp. 204, 205. (Emphasis supplied.)

We recognize that the Minnesota case can be distinguished from the instant case on the facts as well as on the basis that the Minnesota statute, unlike Wisconsin's, specifically permits deductions for service charges from gross receipts as long as the service charge is separately stated. Nevertheless, as the emphasized portion of the opinion illustrates, under common practice, the distinction between a supposedly wholly discretionary

tip and a mandatorily imposed service charge, is difficult to draw.

Support for the result we reach in this case is also found in *Green v. Surf Club, Inc.* (Fla. App. 1961), 136 So. 2d 354. In that case, the state of Florida was attempting to collect sales taxes from the Surf Club, a nonprofit social organization. The club on appeal argued that no sales tax should be levied on the service charge which was automatically added to the price charged members for food or beverage in lieu of a tip. By agreement with the club, its service personnel waived their right to receive gratuities from the patrons in exchange for the club's agreement to collect a fixed percentage of the gross sales price on food and beverage, and remit the percentage monthly to the employees as "a part of their salary of wages" as a "bonus." The Florida court agreed with the club, finding it to be nothing more than an instrumentality or a conduit for the collection of gratuities or tips for its waiters or service personnel. The court stated (p. 356):

> "There may be situations wherein the collection of a fixed service charge is taxable, such as where the assessment and collection thereof has no relationship to the sums received by the service personnel but is retained by the employer as a portion of the gross proceeds on the sale of food and beverage. The determinative question in each instance should be whether or not the 'dealer' receives a benefit from the involuntary charge. If he does, he should be taxed. If he does not, no tax should be levied."

Although the Wisconsin sales tax statutes do not require a benefit flowing to the seller before a tax can be imposed, nevertheless the rationale of the Florida court has validity here.

Just as the above two cases can be distinguished from the instant case, so, too, can the cases relied upon by the department in its brief and the trial court as authority for including this 15 percent service charge in the appellant's gross receipts, be distinguished. Thus, *Youngstown*

*Club v. Porterfield* (1970), 21 Ohio St. 2d 83, 255 N. E. 2d 262, wherein the Ohio Supreme Court held that a mandatory 15 percent service charge imposed by the club on the price of food and drink was subject to the Ohio sales tax, is distinguishable from the instant situation. There, the specific purpose of the mandatory 15 percent service charge was to increase the service employees' wages, without increasing the dues of the members or the price of food and beverages. The employees involved received the accumulated service charges at the end of each pay period, less federal and city withholding taxes. In that case, the service charge was used to supplement and increase the employees' wages and was thus clearly a factor in the club's labor and service costs. In the instant case, the accumulated service charges were paid out, not as supplements to the employees' weekly wages, but as a bonus at the end of the year.

Similarly, *Baltimore Country Club v. Comptroller* (1974), 272 Md. 65, 321 Atl. 2d 308, is distinguishable from the instant situation. There, the Maryland Court of Appeals held that the mandatory 15 percent service charge which the club, pursuant to resolution, added to its stated price for food and beverages and which was billed to the members as part of the monthly statement, was part of the price of the club's retail sales of food and beverages and was subject to the sales tax. Again in that case, as contrasted to the instant case, the 15 percent service charge was used to supplement the employees' wages and in some cases, the amount of payments of the collected service charges were not dependent upon the amount of service charges personally generated by the employee or by the total amount of service charges collected. The club guaranteed payments to certain employees regardless of whether there was enough money in the service charge account to pay such guaranteed amounts. If there was not, the club used money from other accounts. Moreover, a portion of the service

charges paid in the *Baltimore Country Club Case* was applied to satisfy the club's obligation to pay the minimum wage required by law.

Also, the case of *Cohen v. Playboy International, Inc.* (1974), 19 Ill. App. 3d 215, 311 N. E. 2d 336, is distinguishable from the instant case. In *Cohen* the Illinois court held that the 15 percent mandatory service charge added to the customer's bills was not a tip but was includable within the price paid for food and drink and was taxable under the Illinois taxing statute. In *Cohen* the club was required by union contract to pay this collected service charge to the female employees who served the customers. It was not a bonus given to such employees, but rather was part of that club's labor or service costs. Moreover, unlike the instant case, the customers of the Playboy Club had no discretion in the matter. The 15 percent service charge was apparently unilaterally imposed by the club's management and not adopted as a bylaw by the club membership. In *Cohen* the members were required to pay 15 percent service charge—an amount the management could rely on in negotiating wages with its employees. In the instant case, the club membership collectively adopted a bylaw imposing a 15 percent service charge, which was thereafter required of its members. This was in the first instance a discretionary act by the members of the appellant country club. As such, and in conformity with the department's own regulation, we conclude the 15 percent service charge added onto the member's bills in this case is not includable within the appellant's gross receipts.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded.