PEORIA HOTEL COMPANY, d/b/a Peoria Hilton Hotel Company, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Third District No. 80-25

Opinion filed August 12, 1980.

STOUDER, J., dissenting.

Timothy J. Howard, of Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellant.

William J. Scott, Attorney General, of Chicago (Imelda Terrazino, Assistant Attorney General, of counsel), for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by Hilton Hotel from an order of the Circuit Court of Peoria County which upheld an administrative decision of the Department of Revenue which found that Hilton was liable for a retailers' occupation tax assessment on banquet gratuities collected from customers.

In July of 1976 a Mr. Sievers of the Department of Revenue conducted an audit of the Hilton Hotel in Peoria for the period of July 1, 1973, through June 30, 1976. Subsequent to this audit Hilton was notified that it was liable for unpaid State and municipal retailers' occupation tax in the sum of $20,669.68 including penalty and interest. It was the position of the Department that the tax liability resulted from a deduction claimed by Hilton for gratuities collected from banquet customers.

Evidence adduced during the hearing of this case establishes that the collection of gratuities at banquets was governed by a contract in effect between Hilton and its employees union. Pursuant to the terms of the contract Hilton agreed to seek a 15 percent gratuity on all banquet functions. Of this 15 percent added to the check, 90 percent was paid to service personnel (waitresses); 6½ percent was paid to the executive catering staff; and 3½ percent was retained by Hilton to cover "overhead," *i.e.*, cost of a paymaster issuing checks, cost of personnel to "clock" the employees, and cost to collect the gratuities and to cover bad checks.

It was further established by the evidence that dining customers usually leave a tip with the employee who attends his or her table, and when left in such a manner the gratuities are discretionary and do not become a part of the employer's gross receipts.

It was the testimony of the general manager of Hilton that the union contract provision pertaining to gratuities was not mandatory and further that the 15 percent gratuity charge was not mandatory on customers in that when negotiating for a banquet agreement the customer had the discretion to discuss the amount of gratuity to be paid or could reject the paying of any gratuity. It was the general manager's testimony that a banquet agreement could be entered into where there would be no agreed gratuity and in that event the service personnel would have the choice of passing the plate.

A further recitation as to the Department of Revenue's regulations and the evaluation of its departmental rules concerning the applicability

of the retailers' occupation tax to gratuity charges will be noted as we address the issues raised in this appeal.

The first issue raised for determination is Hilton's contention that the gratuities collected were discretionary rather than mandatory payments made by the banquet customers.

We note that both parties are in agreement that the pivotal question to be determined is whether the gratuity charges were mandatory or discretionary. In addressing our attention to a determination of the mandatory or discretionary question it is clear that prior to 1974 it was the policy of the Department to consider gratuity charges as not being a part of a taxpayer's gross receipts and therefore not subject to retailers' occupation tax if two conditions were met: (1) the charge was in fact stated separately on each bill, and (2) all of the proceeds were in fact distributed to the employees who would normally have received the tips or gratuities. This policy of the Department was overruled by the decision in *Cohen v. Playboy Clubs International, Inc.* (1974), 19 Ill. App. 3d 215, 311 N.E.2d 336. In *Cohen*, the appellate court, First District, held that a mandatory gratuity or service charge made in connection with the selling of food and beverages is includable within and not deductible from the selling price of food and drinks. In *Cohen* it was argued that the separately stated service charge which specifically states "includes gratuities" is in effect a tip or gratuity. The reviewing court dispelled the "separately stated charge" guideline which had been in effect prior to 1974 by stating:

> "This argument is without merit. The service charge, although a fixed percentage of the bill, is mandatory. The customer has no discretion as to the decision to pay or not to pay or the amount of the payment. He may or may not leave an *additional amount* as a gratuity. If he does, *that* amount is within his personal discretion. However, the service charge is not in any sense gratuitous." 19 Ill. App. 3d 215, 220-21, 311 N.E.2d 336, 340.

Subsequent to the holding in *Cohen* the test as to whether gratutities were taxable was whether they were of a mandatory or of a discretionary character. This test was recognized and confirmed in *Fontana D'Or, Inc. v. Department of Revenue* (1976), 44 Ill. App. 3d 1064, 358 N.E.2d 1283.

In the instant case it can only be concluded that the 15 percent gratuity collected by Hilton was a mandatory charge payable by banquet customers. Hilton was obligated to seek a 15 percent gratuity, and while it is argued by the hotel that this was a negotiable matter, the record fails to reveal any instance during the three-year period in question when there was any variation from the 15 percent charge or that there was ever a refusal to pay this amount. The individual diners or customers had no

control over the amount of the gratuity to be charged or how it was to be disbursed. It was aptly stated by the Supreme Court of Arizona that:

"It is common knowledge that patrons do not as a rule tip caterers, kitchen employees, secretaries and others with whom they do not come into direct contact. A tip is in law, if not always in fact, a voluntary payment. It is not the subject of negotiation or contract, as are the 'service charges' here." *Beaman v. Westward Ho Hotel Co.* (1960), 89 Ariz. 1, 4-5, 357 P.2d 327, 329.

The gratuities in question in the instant case were not dispersed in their entirety to the waitresses, since a portion of the amount paid to Hilton was received by the executive catering staff, a paymaster and a "checker or clocker" of employees. A portion was also used to collect the gratuities and bad debts. A banquet patron had no knowledge as to the distribution of the gratuity which he paid, and we dare say he had no desire to reward or pay anyone other than the waitresses who waited upon him and provided personal service to him in the dispensing of food and libation.

■■ The 15 percent gratuity charges by Hilton, being mandatory in nature, were properly determined to be a part of Hilton's gross receipts and hence subject to an assessment of the retailers' occupation tax.

Hilton further argues that the Department applied changes in its administrative policy regarding gratuities retroactively and in doing so they acted illegally and the State is barred from collecting the taxes.

Specifically it is Hilton's argument that after the *Cohen* decision of April 18, 1974, the Department of Revenue changed its policy regarding the taxation of gratuities, yet failed to promulgate its changes so that taxpayers could be in conformity with them.

The Department's position, *inter alia*, is that the filing of the *Cohen* decision provided sufficient notice as to its change of policy. We need not determine whether this position of the Department is correct or incorrect, since Hilton failed to comply with the Department's regulations both prior to and during the time span of the audit, to wit, July 1, 1973, through June 30, 1976. Stated otherwise, if we assume *ad arguendo* that because of lack of notice Hilton was not compelled to follow the policy changes engendered by the case of *Cohen*, then it follows that they should have followed the regulations *in esse* prior to *Cohen*. As we have previously noted, those regulations provided that gratuity charges were not to be a part of the taxpayer's gross receipts and therefore not subject to retailers' occupation tax if both of the following conditions were met, (1) the charge was in fact separately stated on each bill, and (2) all of the proceeds were in fact distributed to the employees who would normally have received tips or gratuities. The second condition was never met by

Hilton since the gratuities were never distributed in their entirety to the hotel's service personnel. The record discloses that it was the testimony of the hotel's auditor that a portion of the gratuities collected was used for the payment of overhead costs and that the procedure had been followed for the 18 years which preceded the hearings conducted in the year 1977.

Hilton further argues that it was treated in the past audits as though the gratuities were proper deductions, and relying upon such treatment, it should not be liable for the taxes in question. Hilton disclaims that this argument is based upon the doctrine of estoppel, but regardless of semantics the gist of the argument is that based upon past action or lack of action by the Department, the State is estopped from collecting the taxes found to be due for the period of July 1, 1973, through June 30, 1976. ▌Public policy generally opposes the application of an estoppel against the State where public revenues are involved. (See *Austin Liquor Mart, Inc. v. Department of Revenue* (1972), 51 Ill. 2d 1, 280 N.E.2d 437.) It has further been held by a reviewing court in our State that certain transactions were taxable despite the fact that the Department of Revenue for over 30 years saw fit not to tax the same. (See *Illinois Power Co. v. Mahin* (1977), 49 Ill. App. 3d 713, 364 N.E.2d 597; *In re F. W. Koenecke & Sons, Inc.* (7th Cir. 1976), 533 F.2d 1020.) We cannot agree with Hilton that the law bars the State from collecting the taxes in question because the Department of Revenue failed to take such action in the years preceding the audit in question.

For the reasons set forth the judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I must respectfully dissent from the majority opinion finding the Peoria Hilton Hotel Company (Hilton) liable for the additional tax.

The audit by the Department of Revenue covered the period from July 1, 1973, through June 30, 1976. Prior to 1974, the policy of the Department was to consider gratuity charges as not being part of the taxpayer's gross receipts, and therefore not subject to the retailers' occupation tax, if the charge was stated separately on the bill and all of the proceeds were in fact distributed to the employees who would normally have received the tips or gratuities. But in 1974, this policy was modified by the decision in *Cohen v. Playboy Clubs International, Inc.* (1974), 19 Ill. App. 3d 215, 311 N.E.2d 336, in which it was held that the determinative factor in whether the gratuity charges were part of gross

receipts was whether or not the charge was mandatory. Subsequently, the Department adopted this test as its policy but failed to promulgate any rule or regulation regarding this change of policy.

The crux of the issue in the case at bar is whether the taxpayer, Hilton, should be held liable for additional tax when the Department of Revenue changes its policy but fails to issue any new rule or regulation which spells out the particular change. The majority fails to address this issue, stating instead that Hilton failed to comply with the Department's regulations in effect prior to the decision in *Cohen* and therefore Hilton is liable for the extra tax regardless of *Cohen's* effect. In other words, the majority holds that whether or not the test of mandatory gratuities is applicable is immaterial in the present case because, in any event, Hilton violated the previous regulations. The trouble with the majority's analysis is that Hilton has never been found to have violated those regulations. The administrative ruling found Hilton liable for the additional taxes only on the ground that the gratuity was mandatory, not that Hilton had failed to comply with the previous existing regulations. Upon review, the circuit court held the findings of the Department of Revenue were not against the manifest weight of the evidence. Nowhere did the court hold that Hilton had violated the Department's regulations prior to *Cohen*. In the absence of such findings the majority does not have the ability to suddenly declare that Hilton had violated the Department's regulations. Therefore, the majority's holding that Hilton is liable is based on an invalid premise.

The majority's holding that Hilton is liable for the additional tax because it violated the Department's regulations renders the majority's discussion of whether or not the mandatory gratuity charges made Hilton liable dicta and permits the majority to decide the case without confronting a critical issue—whether the filing of the *Cohen* decision provided sufficient notice to the taxpayer regarding the Department's change of policy so that there would be no violation of due process. I believe it was not sufficient notice.

In the present case, Hilton had no reason to believe that it was not conforming to Department policy. Hilton had used the same procedure of treating the gratuities as deductible for 18 years, and past audits had always treated this procedure as being correct. While this fact in no way estops the Department from changing its policy, it does raise questions about the fundamental fairness necessary for due process of changing the policy without at least providing a means by which the taxpayer may discover there has been a change of policy. If Hilton had followed the reasonable course of checking the Department's regulations periodically, it would have found nothing to make it think there had been a dramatic shift of policy regarding gratuities. The Department contends that the

filing of the *Cohen* decision constituted sufficient notice to the taxpayer to avoid due process problems. The majority fails to address this issue. I believe this issue must be addressed to resolve the case, and I believe that the filing of *Cohen* was not sufficient notice. To hold that the filing of *Cohen* was sufficient notice would place an intolerable burden upon small businesses. In addition to regularly checking Department rules and regulations, businesses would have to meticulously check advance sheets for cases which might possibly affect them. Further, notice of the simple filing of a decision would not serve to alert the business as to whether or not the Department intends to change its policy due to the decision. And in any event, the effective date of the decision does not determine the effective date of the regulation, which is at best vague. A perfect example is the case at bar, in which the decision was filed April 18, 1974, and the Department wishes to apply it to the audit period from July 1, 1973, to April 18, 1974, as well as the rest of the period. Therefore, to require businesses to check advance sheets for cases possibly affecting them would be a useless waste of time, energy and money. It would be much simpler, more logical and more efficient for the Department to simply amend an existing regulation or promulgate a new one when a case causes it to change its policy. This would adequately serve notice to taxpayers of changes in policy and comport with due process.

In the instant case, had Hilton been given notice of the change in policy, it could have passed the additional costs on to its customers. While the instant case does not deal with retroactively applying the change in policy (except from July 1, 1973, to the date *Cohen* was filed), I find the reasoning in *Pressed Steel Car Co. v. Lyons* (1955), 7 Ill. 2d 95, 129 N.E.2d 765, to be applicable here. In *Pressed Steel* the court refused to retroactively apply a regulation. One of the bases for this decision was that the company had relied on the regulations extant prior to the new regulation in contracting with its customers. Hilton is in a similar situation. It relied on the regulations in existence in contracting with banquet customers. Unlike *Cohen*, where the tax had already been collected, in the instant case, the tax had not been collected and the majority's holding would require Hilton to pay the tax out of its own pocket when it would otherwise have passed the additional cost on to its customers. In the absence of new regulations or any sort of notification of change of policy to the taxpayer, imposing additional taxes on these contracts is a violation of due process.

For the aforementioned reasons, I dissent.