338 S.E.2d 166

**LAKEVIEW INN AND COUNTRY CLUB, INC.**

v.

**Herschel H. ROSE, III, Tax Commissioner of the State of West Virginia.**

No. 16576.

Supreme Court of Appeals of West Virginia.

Dec. 6, 1985.

Samuel W. Braver, Steven M. Cherin, Pittsburgh, Pa., James Arnold, King, Betts & Allen, Charleston, for appellant.

Charlie Brown, Atty. Gen., Gregory A. Morgan, Asst. Atty. Gen., Charleston, for appellee.

**BROTHERTON, Justice.**

The appellant, Lakeview Inn and Country Club, Inc. (Lakeview), appeals from two final orders of the Circuit Court of Kanawha County. The circuit court, in decisions rendered April 11, 1984, upheld the imposition of both consumers sales and service tax and business and occupation tax on a

15% gratuity collected by Lakeview from its banquet customers during the years 1976 through 1979. The two cases have been consolidated for purposes of this appeal. For the reasons set out below, we reverse the decisions of the circuit court, and hold that the gratuities in issue are not subject to either tax.

We begin with a brief review of the facts. During the period in issue, Lakeview operated a hotel, restaurant, and private country club near Morgantown, West Virginia. As part of this operation, it offered banquet facilities and services to the public. When Lakeview scheduled a banquet, it sent a confirmation to the customer indicating the date and the approximate number of people expected, and requesting the customer to sign and return the letter in acknowledgement. Along with the confirmation, Lakeview sent a menu listing prices per plate for various dinners. At the bottom of the menu, there appeared this statement: "Prices do not include 3% tax [now 5%] and 15% gratuity."

Ordinarily, at the conclusion of a banquet, the manager would present a bill to the customer, which indicated the total charge for food and beverages, plus sales tax and a 15% gratuity. The gratuities collected at each banquet were segregated on Lakeview's books, and paid out in equal shares to the waiters, waitresses, and bartenders who worked at that banquet.[1] Lakeview retained no part of the amount collected as gratuities, nor did it guarantee its employees that they would receive 15%. Lakeview did not collect or pay sales tax on the banquet gratuities, and paid no business and occupation tax on those amounts.

It is Lakeview's contention that the 15% charge was a suggested amount, which, like a cash tip, could be altered by the customer before signing the check. In support of this position, Lakeview introduced copies of five banquet bills that reflected gratuities of less than 15% of the bills.[2] In addition, Lakeview's controller testified that Lakeview did not consider customers legally bound to pay any of the 15% charge, and that if a banquet customer had refused to pay any gratuity at all, whether on account of service or otherwise, that decision would have been accepted.

The State Tax Commissioner asserts that the 15% banquet gratuity was in fact a nonnegotiable service charge levied by Lakeview for the services of its banquet employees. As such, in the Commissioner's view it is no different from the labor costs built into the price of banquet meals, and is, therefore, a taxable receipt of Lakeview Inn and Country Club. In support of this position, the Commissioner cites the fact that banquet customers almost never altered the gratuity. He also points out that Lakeview was allowed to credit the gratuities toward its federal minimum wage obligations.

This Court has never addressed the applicability of either the business and occupation tax or the consumers sales and service tax to tip income.[3] As a starting point, the parties appear to agree that neither tax applies to a cash tip awarded for individual service. Further, authorities relied upon by the Commissioner indicate that a tip paid to a waiter by his employer after a customer writes the amount thereof on the check should be treated on the same basis

---

1. Although it is not entirely clear from the record, it appears that gratuities on the food charges were divided equally among the waiters and waitresses, and those on the bar bill were divided equally among the bartenders.

2. Of the five bills, only two were for what we think of as standard banquet services. The other three were for 1,000 cocktail tickets, 170 glasses of champagne, and room service catering, respectively. Although this leaves a small number of cases in which the 15% charge was altered, the relevant inquiry is whether customers were free to change the gratuity, not how many times it actually was changed.

3. In the same year that the assessments in this case were issued, the Commissioner promulgated a ruling which concluded that banquet gratuities were subject to both taxes. See Adm. Dec. 80–34–B, W.Va. State Tax Rptr. (CCH) ¶ 69–095. Although we afford considerable weight to the interpretations given our statutes by the officers entrusted with their enforcement, this contemporaneous ruling can be taken as little more than a statement of the Commissioner's position.

as a cash tip. *See* Rev.Rul. 59–252, 1959–2 C.B. 215, *citing* S.S.T. 301, 1938–1 C.B. 455; Rev.Rul. 57–397, 1957–2 C.B. 628.

The Commissioner's position thus is not that all gratuities constitute consideration for services provided by a restaurant or hotel employing waiters and waitresses. He has singled out banquet gratuities, which have two distinguishing characteristics—they are calculated by Lakeview and automatically added to a customer's bill, and they are collected and distributed by Lakeview, rather than being awarded directly to its employees.

### I.

 We turn first to the issue of sales tax liability. The sales tax is imposed for the privilege of selling property and dispensing services, and its measure is the consideration received for sales. W.Va. Code § 11–15–3 (1983). We must determine, therefore, whether the banquet gratuities were given as consideration for the services provided by Lakeview. In order to constitute good consideration, a promise must impose a legal liability on the promissor. *See, e.g., Banner Window Glass Co. v. Barriat*, 85 W.Va. 750, 102 S.E. 726 (1920). We thus have a question of whether customers were legally bound to pay the 15% gratuity.

The findings of the circuit court are inconclusive on this issue. The circuit court

affirmed the Commissioner's factual determination that "the payment of the (suggested, customary) gratuity (or 'tip' of 15%) was, for all practical purposes, required," as not clearly contrary to the evidence. It recognized, however, that "there is some evidence in support of the contention of the Appellant [Lakeview] that payment of the 'gratuities' and the amount thereof was determined 'voluntarily' by the customer." *Lakeview Inn & Country Club, Inc. v. Rose*, Nos. AP–CA–82–71, 72, slip ops. at 1 (Kanawha County Cir.Ct., Apr. 11, 1984). The letter agreement stated only that the prices did not include the gratuity. Further, the uncontroverted testimony at trial, supported by the bills in which gratuities were reduced, was that Lakeview did not enforce the gratuity against a customer who was unwilling to pay it. We find, based on this evidence, that the letter agreement constituted a binding contract to pay the stated charge for banquet meals, leaving the gratuity open for negotiation.

Our sales tax is much like those imposed by other states, and the parties have marshalled a considerable number of cases, pro and con, concerning the imposition of state sales taxes on standardized gratuities.[4] In *Youngstown Club v. Porterfield*, 21 Ohio St.2d 83, 255 N.E.2d 262 (1970), for example, (a case cited by the circuit court in its opinions), a private club adopted a policy of adding a 15% charge to all food and drink

---

**4.** *See generally* Annot., 73 A.L.R.3d 1226 (1976). Virtually all the reported cases deal with standardized tips imposed by social clubs. In the primary exception, *St. Paul Hilton Hotel v. Commissioner*, 298 Minn. 202, 214 N.W.2d 351 (1974), the Supreme Court of Minnesota held that a mandatory service charge added by a hotel to the price of banquet meals was not subject to state sales tax, where the charge was separately stated and state law excepted separately stated service charges from the definition of "sales price." 298 Minn. at 204–05, 214 N.W.2d at 352. We have no such exception in our statute, but we note the following dicta regarding the nature of the disputed gratuity:

> The purported distinction between discretionary "tips" and mandatory "service charges" squares neither with the statute nor familiar customary meaning in the market place. The "tip" following a meal in, say, a fine restaurant is so mandated by social custom, even as to a percentage of the bill, that it is for all

practical purposes as much an expected "fee" for service as it is a "present" expressing appreciation for being served. Testimony in the record establishes that the mandatory service charge has evolved as a convenient substitute for the voluntary tip, a practice accommodated by the general language of the statute. *Id. See also Peoria Hotel Co. v. Illinois Dept. of Revenue*, 87 Ill.App.3d 176, 42 Ill.Dec. 473, 408 N.E.2d 1182 (1980) (15% gratuity taxable where hotel bound by contract to collect it and where hotel retained a portion of the gratuities collected). We note at the outset that gratuities collected by a social club typically are authorized by a resolution or by-law adopted by the members and by which the members are contractually bound. *See, e.g., Baltimore Country Club, Inc. v. Comptroller*, 272 Md. 65, 321 A.2d 308, 310–11 (1974). Such a situation is distinguishable from that of a banquet patron, who is forewarned of the charge but may not have agreed in advance to pay it.

checks, and prohibited cash tips.[5] The service charge on each check was credited to the account of the appropriate waiter, and service charges were distributed by separate check to each waiter at the end of each pay period. 21 Ohio St.2d at 84, 255 N.E.2d at 263. The Supreme Court of Ohio found that the service charge was part of the taxable sales price of food and drinks served by the club. Although the charge was separately stated and acknowledged as a replacement for the custom of voluntary tips, the court noted that the charge was included in the club's bills to its members, and characterized it as a labor cost, no different from the labor costs included in the price of food and drinks. *Id.* 255 N.E.2d at 264.[6]

In a case involving similar facts, the Supreme Court of Tennessee held that an automatic 15% "minimum tip" adopted by resolution of a club's board of directors was not subject to state sales tax. *Memphis Country Club v. Tidwell*, 503 S.W.2d 919 (Tenn.1973). There, the resolution provided that additional tips would be allowed on top of the 15% for "extra services," and that members could eliminate the 15% if dissatisfied with the service. 503 S.W.2d at 919. The court noted the decision of the Ohio Supreme Court in *Youngstown Club*, but concluded:

> The record shows to our satisfaction that the only compulsion on the members to observe the tipping schedule established by the resolution is a social and not a legal one. This conclusion is determinative of our further conclusion that the tips do not constitute a part of the charge for the services rendered and should not be included in the club's tax base.

503 S.W.2d at 921. Courts in several other states have used similar reasoning to void sales tax assessments on service charges at private clubs. *Big Foot Country Club v. Wisconsin Dept. of Revenue*, 70 Wis.2d 871, 877–81, 235 N.W.2d 696, 699–701 (1975); *Sangamo Club v. Department of Revenue*, 115 Ill.App.3d 617, 621–21, 72 Ill.Dec. 429, 431, 450 N.E.2d 1308, 1310 (Ill.App.Ct.1983); *State v. International Trade Club, Inc.*, 351 So.2d 895, 898 (Ala. Civ.App.1977). *Cf. Green v. Surf Club, Inc.*, 136 So.2d 354, 356 (Fla.Dist.Ct.App. 1961), *cert. denied*, 139 So.2d 694 (Fla.1962) (tips held not taxable where employer served as mere conduit for money).

■ If a generalized test may be drawn from the above cases, it is that "mandatory" service charges are taxable as part of the employer's total sales price of food and beverages, whereas "discretionary" service charges, like cash tips, are rewards to the employees themselves and therefore nontaxable. This test is similar to our inquiry as to whether or not patrons are bound to pay the gratuity as part of the consideration for their meals. The difficulty of drawing a clear distinction between mandatory and discretionary in this context is illustrated by the varying results reached by courts dealing with very similar facts. We believe that the better-reasoned cases are those that recognize a standardized service charge as the natural outgrowth of the social custom of tipping, and therefore treat the charge as a discretionary, nontaxable tip. This is true when, as in this case, the amount may be varied by the customer, and the business neither retains any part of the amounts collected nor guarantees an amount other than the amount collected to its employees. We therefore hold that the Commissioner's assessment

---

5. In practice, members occasionally altered the 15% figure, and the prohibition against cash tips was not enforced by disciplinary action. 21 Ohio St.2d at 84, 255 N.E.2d at 263.

6. The circuit court also cited *Baltimore Country Club, Inc. v. Comptroller of the Treasury*, 272 Md. 65, 321 A.2d 308 (1974). We consider that case inapposite, however, because the tips received by service personnel in that case were not necessarily related to the amounts collected from club patrons. *See* 272 Md. at 70–71, 321

A.2d at 311. *See also Cohen v. Playboy Clubs International, Inc.*, 19 Ill.App.3d 215, 311 N.E.2d 336 (1974) (15% mandatory service charge subject to state sales tax where charge was required by union contract). Similarly, rulings regarding the definition of "wages" for federal employment taxes and income tax withholding, although helpful, are not determinative of the scope of "consideration" subject to state sales tax. *See* Rev.Rul. 59–252, 1959–2 C.B. 215, cited by the circuit court in its opinions.

of consumers sales and service tax on banquet gratuities collected by Lakeview was improper and must be withdrawn.

■ Before leaving the subject of sales tax, we must address another rationale sometimes employed to support the imposition of sales tax on gratuities collected and disbursed by an employer. Under United States Code § 203(m) (1978), as in effect during the period in issue, an employer was allowed to credit tips against up to 50% of its federal minimum wage obligations.[7] The record reflects that Lakeview did apply the gratuities in issue to offset a portion of the minimum wage payable to its employees. Some courts have relied on the benefit afforded an employer by this provision to support the imposition of sales tax on gratuities to the extent so applied. *See, e.g., State v. International Trade Club, Inc.,* 351 So.2d 895, 897 (Ala.Civ.App.1977); *Anders v. State Bd. of Equalization,* 82 Cal.App.2d 88, 96, 185 P.2d 883, 885 (1947).[8]

A close review of the federal authorities leads us to the conclusion that the minimum wage benefit analysis is internally inconsistent and will not be followed by this Court. Section 203(m) of the federal code allowed an employer to credit "tips" toward up to *50%* of the minimum wage. Regulations promulgated in 1967 define "tips" along the same lines as the cases discussed above.[9] Specifically, 29 C.F.R. § 531.55(a) (1985) states that:

A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) [29 U.S.C. § 203(m)] and 3(t). Similarly, *where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.*

(emphasis added). Thus amounts constituting service charges rather than tips cannot be credited against the minimum wage. Put another way, amounts properly credited against the minimum wage are tips, not service charges, and, under the Commissioner's own analysis are not subject to tax. This line of cases does not, therefore, aid our analysis.

## II.

■ We turn now to the issue of business and occupation tax liability. The issue here is whether the banquet gratuities were "gross income of the business" of Lakeview Inn and Country Club.[10] Code

---

7. The current statute allows credit of up to 40%. 29 U.S.C. § 203(m) (Supp.1985). With respect to tipped employees, 29 U.S.C. § 203(m) (1978) provided:

 In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee.

8. The court in *Anders* dealt with California's state minimum wage provision. The regulations discussed below would not, therefore, necessarily undermine its analysis.

9. 29 C.F.R. §§ 531.52–.53 (1985), promulgated September 28, 1967, provides:

 A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer....

 In addition to cash sums presented by customers which an employee keeps as his own, tips received by an employee include, within the meaning of the Act, amounts paid by bank check or other negotiable instrument payable at par and amounts transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips.

10. The Commissioner assessed business and occupation tax on the gratuities in the service category, W.Va. Code § 11–13–2h (1983). Lakeview has contended throughout that the retail sales category, W.Va. Code § 11–13–2c (1983), rather than the service category, should apply if

§ 11–13–1 (1983) defines "gross income" to include "the gross receipts of the taxpayer derived from trade, business, commerce or sales ... without any deductions on account of the cost of property sold, the cost of materials used, labor costs, ... or any other expenses whatsoever." The Commissioner emphasizes the prohibition of the deduction of costs and expenses to support the imposition of tax on gratuities which are in fact "receipts" of Lakeview. We agree with the Commissioner that the banquet gratuities were gross receipts. The Code requires in addition, however, that gross receipts be derived from the "business" of the taxpayer in order to constitute "gross income" subject to the tax. Section 11–13–1 defines "business" as including "all activities engaged in or caused to be engaged in with the object of gain or economic benefit, either direct or indirect."

The question thus becomes whether Lakeview, through its employees, performed the services that gave rise to the gratuities with the object of gain or economic benefit. In accordance with our conclusion above that the banquet gratuities are a natural outgrowth of the social custom of cash tipping, we must recognize that a tip, at least in theory, is awarded for the special services performed by the individual waiter or waitress, above and beyond the tasks for which he is paid by his employer. Thus the waiters and waitresses performed the services that earn the tips in their individual capacities rather than as Lakeview's employees. The only services performed by Lakeview were the collection and distribution of the gratuity, which only facilitated a transaction that would have occurred (and not been taxed) even if Lakeview had not acted as intermediary. It does not appear, therefore, that Lakeview either earned the gratuities itself or collected them with the object of gain or economic

benefit. For this reason, we hold that the banquet gratuities collected by Lakeview were not gross income subject to business and occupation tax. *Cf. Bethlehem Mines Corp. v. Haden,* 153 W.Va. 721, 741–42, 172 S.E.2d 126, 138 (1970) (gross income does not include reimbursements that were not remuneration for services rendered).[11] The Commissioner's assessment thus was improper and must be withdrawn.

For the reasons set out above, the decisions of the Circuit Court of Kanawha County in this case are reversed.

Reversed.

---

the tax is upheld. Because we find that the gratuities are not taxable, we do not address the issue of which business and occupation tax category applies. In either case, the tax is imposed on business gross income. W.Va. Code §§ 11–13–2c, 2h (1983).

11. *See also Daily v. Bechtel Corp.,* 157 W.Va. 1023, 1028, 207 S.E.2d 169, 173 (1974). The holding in *Bethlehem Mines* allowed a taxpayer

engaged in a service or contracting business to reduce substantially its business and occupation tax liability by structuring the payment terms of its contracts to provide for reimbursement of costs. The Legislature moved to close this loophole in 1971 by including "reimbursed costs and expenses" in the definition of "gross income" in § 11–13–1. 1971 W.Va. Acts 893.