BERNS, and others, Plaintiffs-Appellants, v. WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Defendant-Respondent.†

Court of Appeals

*No. 79–359. Submitted on briefs November 7, 1979.— Decided December 11, 1979.*
(Also reported in 287 N.W.2d 829.)

† Petition to review granted.

For the appellants the cause was submitted on the briefs of *David T. Bryant,* National Right To Work Legal Defense Foundation, of Fairfax, Virginia, and *Willis B. Ferebee* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom in the brief was *John D. Niemisto,* assistant attorney general.

For the respondent-intervenor Milwaukee District Council 48, American Federation of State, County & Municipal Employees, AFL–CIO, a brief was submitted by *Nola J. Hitchcock Cross* and *Podell, Ugent & Cross, S.C.,* of Milwaukee.

Before Decker, C.J., Moser, P.J. and Cannon, J.

CANNON, J.   On February 23, 1976, plaintiffs-appellants, Berns and Browne, filed a complaint with the Wisconsin Employment Relations Commission (WERC) on behalf of themselves and a group of, at that time, unnamed individuals alleging the Milwaukee Board of School Directors and Local 1053[1] and District Council 48[2] had committed prohibited practices in violation of sec. 111.70, Stats. The practices referred to were the retroactive deductions of fair-share fees for a period when there was no collective bargaining agreement "in effect." Plaintiffs alleged that this constituted a viola-

[1] Local 1053 Affiliated with District Council 48 and Chartered by American Federation of State, County and Municipal Employees, AFL–CIO.

[2] District Council, AFSCME, AFL–CIO.

tion of secs. 111.70(3)(a)6, 111.70(3)(b)2 and 111.70 (2), Stats.[3]

[3] Section 111.70(3)(a)6, Stats:
To deduct labor organization dues from an employe's or supervisor's earnings, unless the municipal employer has been presented with an individual order therefor, signed by the municipal employe personally, and terminable by at least the end of any year of its life or earlier by the municipal employe giving at least 30 days' written notice of such termination to the municipal employer and to the representative organization, except where there is a fair-share agreement in effect.

Section 111.70(3)(b)2, Stats:

To coerce, intimidate or induce any officer or agent of a municipal employer to interfere with any of its employes in the enjoyment of their legal rights, including those guaranteed in sub. (2), or to engage in any practice with regard to its employes which would constitute a prohibited practice if undertaken by him on his own initiative.

Section 111.70(2), Stats:

Rights of Municipal Employes. Municipal employes shall have the right of self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, and such employes shall have the right to refrain from any and all such activities except that employes may be required to pay dues in the manner provided in a fair-share agreement. Such fair-share agreement shall be subject to the right of the municipal employer or a labor organization to petition the commission to conduct a referendum. Such petition must be supported by proof that at least 30% of the employes in the collective bargaining unit desire that the fair-share agreement be terminated. Upon so finding, the commission shall conduct a referendum. If the continuation of the agreement is not supported by at least the majority of the eligible employes, it shall be deemed terminated. The commission shall declare any fair-share agreement suspended upon such conditions and for such time as the commission decides whenever it finds that the labor organization involved has refused on the basis of race, color, creed or sex to receive as a member any employe of the municipal employer in the bargaining unit involved, and such agreement shall be made subject to this duty of the commission. Any of the parties to such agreement or any

An examiner appointed to hear the matter concluded that neither respondent had committed any prohibited practice within sec. 111.70 (3), Stats., and dismissed the complaint. By its order of August 8, 1978, the WERC upheld the examiner's finding and concluded that the retroactive provisions of the bargaining agreement were valid. Plaintiffs next filed a petition to review with the circuit court of Milwaukee county. The WERC decision was affirmed. Plaintiffs now appeal the judgment of the trial court.

The dispute arises out of the following facts. Appellants were employed by the School Board during the 1973–74 school year. They were not members of the union, although they were employed within a bargaining unit represented by Local 1053 affiliated with District Council 48, and chartered by American Federation of State, County and Municipal Employees AFL–CIO. The collective bargaining agreement between the School Board and Local 1053 included a "fair share agreement,"[4] which provided that the Board would deduct an amount equal to the monthly dues paid by union members from the earnings of non-union members every month. These deductions were made and remitted to Local 1053 for the 1974 calendar year.

municipal employe covered thereby may come before the commission, as provided in s. 111.07, and ask the performance of this duty.

[4] Section 111.70 (1) (h), Stats:

"Fair-share agreement" means an agreement between a municipal employer and a labor organization under which all or any of the employes in the collective bargaining unit are required to pay their proportionate share of the cost of the collective bargaining process and contract administration measured by the amount of dues uniformly required of all members. Such an agreement shall contain a provision requiring the employer to deduct the amount of dues as certified by the labor organization from the earnings of the employes affected by said agreement and to pay the amount so deducted to the labor organization.

On December 31, 1974, the collective bargaining agreement expired, and no agreement to extend the contract was reached. On February 3, 1975, representatives of the union and the School Board reached accord on a new agreement which was ratified on April 2, 1975. The new agreement contained a fair-share clause, the entire agreement being retroactive by its own terms to January 1, 1975.[5] In April, 1975, the School Board again began deducting fair-share fees from plaintiffs' wages as provided in the new agreement. In February, 1976, the School Board made additional deductions for fair-share fees for the period between January 1, 1975 and March 31, 1975. The current controversy ensued.

It should be noted here that while not named defendants, the employer, Milwaukee Board of School Directors and the exclusive representative, Local No. 1053, American Federation of State, County and Municipal Employees, AFL-CIO were permitted to intervene in the trial court, and will be considered as defendants-respondents in this appeal.

The issue presented for our consideration is whether the fair-share provision of the successor collective bargaining agreement can apply retroactively by virtue of its own terms to cover the deduction of dues for the period of time between the expiration of the 1974 contract and the execution of the 1975 agreement. Specifically, plaintiffs object to the deductions for the time period between January 1, 1975 and February 3, 1975. Resolution of this question will turn on the construction of the statutory language found in sec. 111.70(3)(a)6, Stats:

---

[5] In April of 1975, the president of Local 1053 sent a newsletter to all employes in the bargaining unit informing them, *inter alia,* as follows: "[T]he entire [1975–1977] contract is retroactive, therefore, all fair share personnel will be obligated to pay an amount equal to a months dues for each month of 1975."

(3) Prohibited Practices and Their Prevention. (a) It is a prohibited practice for a municipal employer individually or in concert with others;

. . . .

6. To deduct labor organization dues from an employe's or supervisor's earnings, unless the municipal employer has been presented with an individual order therefor, signed by the municipal employe personally, and terminable by at least the end of any year of its life or earlier by the municipal employe giving at least 30 days' written notice of such termination to the municipal employer and to the representative organization, *except where there is a fair-share agreement in effect.* [Emphasis supplied.]

Simply stated, we must determine whether there was a fair-share agreement "in effect" during the hiatus between agreements.

In determining the meaning of any single phrase or word in a statute, it is necessary to look at it in light of the whole statute. *State ex rel. Tilkens v. Board of Trustees,* 253 Wis. 371, 373, 34 N.W.2d 248, 249 (1948). The primary recourse in construing a statute is to the language of the statute itself. The entire section and related sections are to be considered in its construction or interpretation. *Omernik v. State,* 64 Wis.2d 6, 12, 218 N.W.2d 734, 738 (1974). Moreover, the statute must be interpreted in a manner consistent with the manifest intent of the legislature if there is an ambiguity. Such intent can be determined from an examination of the statute in relation to its scope, history, general statutory context, subject matter and the object intended by the legislature to be accomplished. *State v. Wachsmuth,* 73 Wis.2d 318, 324–5, 243 N.W.2d 410, 414 (1976); *Ortman v. Jensen & Johnson, Inc.,* 66 Wis.2d 508, 520, 225 N.W.2d 635, 642 (1975); *State v. Automatic Merchandisers,* 64 Wis.2d 659, 663, 221 N.W.2d 683, 686 (1974); *Wisconsin Southern Gas Co. v. Public Serv. Comm.,* 57 Wis.2d

643, 648, 205 N.W.2d 403, 406 (1973). The object to be accomplished must be given great weight in determining legislative intent. *Town of Menominee v. Skubitz*, 53 Wis.2d 430, 437, 192 N.W.2d 887, 890 (1972).

On appeal, the construction and interpretation of a statute adopted by an administrative agency is ordinarily entitled to great weight. However, because this case involves an issue of first impression, this court will not be bound by the agency's interpretation. Thus, while we will carefully consider the WERC's ruling, we refuse to limit our review of the question. *Department of Administration v. WERC*, 90 Wis.2d 426, 429–30, 280 N.W. 2d 150, 152 (1979); *Beloit Education Asso. v. WERC*, 73 Wis.2d 43, 67–8, 242 N.W.2d 231, 242–3 (1976).

A fair-share agreement is a form of union security which provides that all employees must pay the majority union a pro rata share of bargaining costs, whether or not they are a member of the union.

Fair-share agreements are generally regarded as devices whereby all public employees in the bargaining unit are "compelled to pay . . . his or her 'fair-share' of the [certified] union's actual cost of negotiations and representation. . . ." Hay, "Union Security and Freedom of Association," in *Labor Relations Law in the Public Sector*, 145, 146 (A. Knapp ed. 1977). Its validity rests on the theory that all employees who benefit from the majority union's representative efforts should financially support those efforts; the fair-share agreement is, in the words of this court in *Board of School Directors v. WERC, supra* at 649, "related to the functioning of the majority organization in its representative capacity. . . ." *Mil. Fed. of Teachers, Local No. 252 v. WERC*, 83 Wis.2d 588, 595–6, 266 N.W.2d 314, 317 (1978).

Fair-share agreements were sanctioned by the Wisconsin Legislature in 1971 when the Laws of 1971, ch. 124 per-

mitted inclusion of fair-share clauses in municipal employee collective bargaining agreements.

The statutory scheme makes a fair-share agreement a mandatory subject of bargaining. This is reinforced by several WERC decisions. Under the Municipal Employment Relations Act (MERA: ch. 111.70, Stats.), the issue of retroactivity of wages, hours and working conditions contained in a collective bargaining agreement between a municipal employer and a labor organization is a mandatory subject of bargaining. *Racine County Deputy Sheriffs' Association v. Racine County,* WERC Dec. No. 10917–A (1973), *aff'd, Racine County v. WERC,* WERC Dec. No. 10917–B (1973), Branch II, Circuit Court for Racine County (1973). A fair-share agreement is also a mandatory subject of collective bargaining because of its effect on wages. Thus the terms of such a clause are subject to negotiated agreement between a municipal employee and a labor organization. *Madison Joint School Dist. No. 8 v. City of Madison, et al.,* WERC Dec. No. 11271 (1972), *aff'd Madison Joint School District No. 8 v. WERC,* 69 Wis.2d 200, 231 N.W.2d 206 (1975), *rev'd on other grounds,* 429 U.S. 167 (1976). The WERC has also ruled that specific terms of a negotiated fair-share agreement, including its effective dates, continue during the stated term of the fair-share agreement unless and until such time as the WERC certifies unfavorable results of a referendum to discontinue the fair-share agreement.[6] *In the Matter of the Petition of City of Appleton,* WERC Dec. No. 11043 (1973). Finally, in *Joint School District No. 8 v. City of Madison, et al., supra,* the WERC construed sec. 111.70(2), Stats. as permitting the implementation of a fair-share agreement according to its own terms without a referendum.

---

[6] *See* footnote 3, sec. 111.70(2), Stats.

In light of the above, and after giving consideration to the expressed legislative policy behind the enactment of MERA,[7] we must agree with the trial court that fairshare agreements become effective, and continue in effect by their own terms according to the parties' agreements and understandings. Adoption of the statutory construction urged by plaintiffs would result in a narrow interpretation which would run counter to the established rulings of the WERC as well as producing a result which is counter-productive to the purposes of the MERA. We find the reasoning of the WERC, in its memorandum decision affirming the examiner, most persuasive:

The Complainants' argument that the words "in effect" found in Section 111.70(3)(a)6 of the MERA must be read to mean contemporaneously with the deductions, is likewise based on an unwarranted literal reading of the words utilized by the legislature.

[T]here is no sound policy basis for concluding that the use of these words was intended by the legislature to impose a limitation on the right of the parties to enter into fair share agreements which retroactively apply to periods when there is a hiatus between the expiration of a prior collective bargaining agreement containing a fair share agreement and the execution of a new collective bargaining agreement. Collective bargaining agreements are frequently, if not universally, given retro-

---

[7] Section 111.70(6), Stats:

(6) Declaration of Policy. The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employes so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them a fair, speedy, effective and, above all, peaceful procedure for settlement as provided in this subchapter.

active application under such circumstances. The obligation to contribute to the cost of collective bargaining and contract administration, which derives from the fair share agreement negotiated pursuant to the MERA, is not inappropriately applied to periods during which collective bargaining agreements are retroactively applied.

The clear legislative intent behind permitting fair-share agreements is to require all those who benefit from collective bargaining negotiations to bear their share of the cost. Allowing retroactive collection of such monies does not defeat this purpose. The union continued to incur expenses during the hiatus while contract negotiations were going on. As long as the successor contract contained a fair-share clause, and by its own terms was intended to cover the hiatus, those who benefited from the union activity should be subject to the obligation to contribute to the costs of such activities. To do otherwise would seriously affect the financial stability of the union and ultimately the rights of the individual members.

Nor does permitting retroactive deduction of fair-share dues run counter to sec. 111.70(2), Stats., which guarantees employees the right to refrain from union activities, as this right is clearly conditioned on and made subject to an obligation to contribute to the costs of bargaining if a fair-share agreement is included in the contract.

*By the Court.*—Affirmed.