BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, State of Wisconsin, Petitioner-Respondent,

v.

WISCONSIN PERSONNEL COMMISSION, State of Wisconsin, and Steven Dropik, Appellants. [Case No. 80–1411.]

Edwin YOUNG, President, University of Wisconsin System, Petitioner-Respondent and Cross-Respondent,

v.

PERSONNEL COMMISSION, Respondent and Cross-Appellant.

Chester MILLER, Petitioner-Appellant and Cross-Respondent,

v.

PERSONNEL COMMISSION, Respondent and Cross-Appellant.† [Case No. 80–1684.]

Court of Appeals

*Nos. 80–1411, 80–1684. Oral argument May 21, 1981.—Decided June 25, 1981.*
(Also reported in 309 N.W.2d 366.)

† Petition to review denied. ABRAHAMSON, J., took no part.

548

For appellant Dropik there were briefs by *Richard V. Graylow* and *P. Scott Hassett* of *Lawton & Cates* of Madison, and oral argument by *Mr. Graylow.*

For appellant Wisconsin Personnel Commission there were briefs by *Daphne Webb* of *Jacobs, Webb & Weiden,* of Madison, and oral argument by *Ms. Webb.*

For petitioner-appellant and cross-respondent Chester Miller the cause was argued by *Bruce K. Kaufmann* of *Jenswold, Studt, Hanson, Clark & Kaufmann* of Madison.

For respondent and cross-appellant Personnel Commission the cause was argued by *Milo G. Flaten* of Madison.

For petitioner-respondent Board of Regents of the University of Wisconsin System, State of Wisconsin, there was a brief by *Bronson C. La Follette,* attorney general, and *Maureen McGlynn,* assistant attorney general, and oral argument by *Ms. McGlynn.*

For petitioner-respondent and cross-respondent Edwin Young, President, University of Wisconsin System, the cause was argued by *Ms. McGlynn.*

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J.   These appeals present the question whether a probationary employe in the classified civil

service of the state of Wisconsin may appeal his discharge to the Personnel Commission. We conclude that the Personnel Commission has no subject-matter jurisdiction of such appeals and affirm the circuit court.

The Board of Regents of the University of Wisconsin System (University) petitioned for review pursuant to ch. 227, Stats., of a decision and order of the Wisconsin Personnel Commission (Personnel Commission) rejecting the University's action terminating Steven Dropik as a probationary trainee on the grounds that the termination was arbitrary and capricious.

Dropik's appointment as a power-plant equipment operator trainee was terminated during his training period for poor work performance. A trainee is "on a probationary period for the duration of the training program and may be separated during that period without the right of appeal, at the discretion of the appointing authority." Sec. 230.28(5), Stats.

Edwin Young, President, University of Wisconsin System (University), petitioned for a ch. 227, Stats., review of orders and decisions of the former Wisconsin Personnel Board (Personnel Board) and the present Personnel Commission determining that Chester Miller, a probationary custodial department employe of the University, had not resigned or quit his employment; that the University failed to terminate Miller; and that such failure was arbitrary and capricious.

The circuit court concluded that neither the Personnel Board nor the Personnel Commission had subject-matter jurisdiction to consider the appeals of Dropik and Miller. Reversal of the orders and decisions was adjudged by the circuit court and the proceedings were remanded to the Personnel Commission with directions to dismiss the appeals for lack of subject-matter jurisdiction.[1]

---

[1] The circuit court did not reach the merits of the reviews, nor do we because we agree with its conclusion that the Personnel

We confine our opinion to the question of subject-matter jurisdiction and the related issues presented by the parties.

## THE DROPIK CASE

We reject Dropik's contention that subject-matter jurisdiction of the Personnel Commission cannot be reviewed pursuant to ch. 227, Stats., and can only be contested by certiorari. The fallacy in the contention is that although certiorari, common-law or statutory, is an appropriate remedial vehicle for an attack on an administrative agency's jurisdiction,[2] ordinarily where the legislature pro-

---

Commission was without jurisdiction. Had we concluded to the contrary, we would remand to the circuit court to afford it an opportunity to address the merits. Although the standard of review in this court is the same as the circuit court, *Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980); *Sanitary Transfer & Landfill, Inc. v. DNR*, 85 Wis. 2d 1, 12, 270 N.W.2d 144, 149 (1978); *Chicago & N.W. R.R. v. Labor & Indus. Rev. Comm'n*, 91 Wis. 2d 462, 475, 283 N.W.2d 603, 610 (Ct. App. 1979); the statutory method of a ch. 227 review provides for initial review by the circuit court. Where a statutory method of review is prescribed, it is generally considered exclusive. *Kegonsa Joint Sanitary Dist. v. City of Stoughton*, 87 Wis. 2d 131, 145, 274 N.W.2d 598, 604 (1979); *Kosmatka v. DNR*, 77 Wis. 2d 558, 567–68, 253 N.W.2d 887, 892 (1977). "[T]he rule that the statutory method of review is exclusive is a rule of policy, convenience and discretion." *State ex rel. First Nat'l Bank v. M & I Peoples Bank*, 82 Wis. 2d 529, 542, 263 N.W.2d 196, 202 (1978). We have not had the benefit of the circuit court's review of the merits. Judicial economy and an orderly judicial process in this case require that the legislative scheme of judicial review be followed. For these reasons we do not address the merits of the orders and decisions, although they have been addressed in some of the briefs.

[2] *Browndale International, Ltd. v. Board of Adjustment*, 60 Wis. 2d 182, 197–99, 208 N.W.2d 121, 127–29 (1973); *State ex rel. Kaczkowski v. Fire & Police Comm'rs*, 33 Wis. 2d 488, 499, 148 N.W.2d 44, 49 (1967).

vides for a unified system of review the statutory system of review is the preferred method.[3]

Questions of law are reviewable, secs. 227.20(3) and (5), Stats., and jurisdiction is a reviewable question of law.[4]

It is well established that questions of law, including the interpretation and application of a statute, are reviewable by this court *ab initio*. Sec. 227.20(5); *Boynton Cab Co. v. DILHR,* [96] Wis. 2d [396], 291 N.W.2d 850 (1980); *Wisconsin Bingo Supply & Equipment Co., Inc. v. Wisconsin Bingo Control Bd.,* 88 Wis. 2d 293, 308, 276 N.W.2d 716, [723] (1979). *Jaeger Baking Co. v. Kretschmann,* 96 Wis. 2d 590, 594, 292 N.W.2d 622, 624 (1980).

Decisions of an administrative agency which deal with the scope of the agency's own power, as in this case, are not binding on this court. *Wisconsin's Environmental Decade, Inc. v. Public Service Commission,* 81 Wis. 2d 344, 351, 260 N.W.2d 712, 716 (1978); *Big Foot Country Club v. Department of Revenue,* 70 Wis. 2d 871, 875, 235 N.W.2d 696, 698 (1975).

Dropik also contends that the doctrine of *res judicata* precludes the University from challenging the subject-matter jurisdiction of the Personnel Commission. The contention is predicated upon a 1976 declaratory ruling of the Personnel Commission pursuant to sec. 227.06(1), Stats. The statute provides in part: "A declaratory ruling shall bind the agency and all parties to the proceeding on the statement of the facts alleged, unless it is altered or set aside by a court. A ruling shall be subject to review in the circuit court in the manner provided for the review of administrative decisions."

---

[3] *See* note 1, *supra.*

[4] *See DH&SS v. State Personnel Bd.,* 84 Wis. 2d 675, 681–82, 267 N.W.2d 644, 647 (1978).

The Personnel Commission determined pursuant to its 1976 declaratory ruling that it had subject-matter jurisdiction to hear appeals of civil service probationers. A representative of the University was a party to the proceeding.

Wisconsin rejects the application of the doctrine of *res judicata* to the proceedings of an administrative agency. *City of Fond du Lac v. DNR*, 45 Wis. 2d 620, 625, 173 N.W.2d 605, 608 (1970). Section 227.06(1), Stats., simply requires internal consistency within a proceeding by binding the agency within that proceeding to its declaratory ruling. Although consistency is a virtue of any adjudicatory body, jurisdictional finality is limited to the proceeding before it.

Even if the long-standing denial of *res judicata* effect to an administrative determination were to be overhauled and modernized, it would not be applicable to the circumstances of this case because Miller and Dropik were not parties to the declaratory ruling of the Personnel Board. Also, the issue is a question of law to which *res judicata* principles would be inapplicable.

*Res judicata* is also inapplicable because the declaratory ruling determined the jurisdiction and power of the administrative agency. Administrative agencies are tribunals of limited jurisdiction dependent upon a statutory grant of authority. *Peterson v. Natural Resources Board*, 94 Wis. 2d 587, 592–93, 288 N.W.2d 845, 848 (1980) ; *Village of Silver Lake v. Department of Revenue*, 87 Wis. 2d 463, 468, 275 N.W.2d 119, 122 (Ct. App. 1978). Administrative determinations made without subject-matter jurisdiction are void and therefore subject to inquiry.

For the purpose of judicial review of the declaratory ruling, the reviewing court is not concluded by the agen-

cy's determination of its jurisdiction. *See Wisconsin's Environmental Decade, supra; Big Foot Country Club, supra.* For the purposes of another proceeding, as is the case here, an administrative agency cannot conclusively settle the question of its jurisdiction, thereby endowing itself with power other than that granted by statute.

The question is essentially one of statutory construction. "On appeal, the construction and interpretation of a statute adopted by an administrative agency is ordinarily entitled to great weight. However because this case involves an issue of first impression this court will not be bound by the agency's interpretation." *Berns v. WERC,* 94 Wis. 2d 214, 221, 287 N.W.2d 829, 832 (Ct. App. 1979), *aff'd,* 99 Wis. 2d 252, 261, 299 N.W.2d 248, 253 (1980). We also note that the rule of deference to administrative construction of a statute is applicable only in the case of statutory ambiguity. *City of Milwaukee v. Lindner,* 98 Wis. 2d 624, 633–34, 297 N.W.2d 828, 833 (1980). In this case we rely upon a clear, unambiguous, and controlling statute of plain meaning and easily capable of literal application.

Next, Dropik contends that the circuit court erred when it determined that the Personnel Commission had no subject-matter jurisdiction to hear appeals from discharged probationary state employes in the classified service.

As a probationary employe, Dropik was subject to dismissal by the appointing authority at any time during his six-month probationary period. Sec. 230.28(1)(a), Stats. An employe with permanent status in class may be dismissed only for "just cause." Sec. 230.34(1)(a). "If an employe has permanent status in class, the employe may appeal a . . . discharge . . . to the commission, if the appeal alleges that the decision was not based on just cause." Sec. 230.44(1)(c).

The 1977–79 collective bargaining agreement between AFSCME and the State,[5] approved by the legislature in ch. 97, Laws of 1977, implemented sec. 111.93 (3) by according a hearing to a discharged probationary employe at the discretion of the Personnel Commission.[6] In sum, Dropik contends that although sec. 111.91 (2) (b) 1., Stats., prohibits the state from bargaining on policies, practices, and procedures of the civil service merit system with respect to probationary periods, sec. 111.91 (3) permits bargaining and agreement with a union representing a certified unit to permit appeals of discharged

[5] Article IV, sec. 10 of the contract provided:

*Section 10. Exclusion of Probationary Employees.* Notwithstanding Section 9 above, the retention of probationary employees shall not be subject to the grievance procedures except those probationary employees who are released must be advised in writing of the reasons for the release and do, at the discretion of the Personnel Board, have the right to a hearing before the Personnel Board.

Article X, paragraphs 148 and 149, provided:

148. The Personnel Board may at its discretion appoint an impartial hearing officer to hear appeals from actions taken by the Employer under Section 111.91 (2) (b)1. and 2., Wis. Stats.

1. Original appointments and promotions specifically including recruitment, examinations, certification, appointments, and policies with respect to probationary periods.

2. The job evaluation system specifically including position classification, position qualification standards, establishment and abolition of classifications, assignment and reassignment of classification to salary ranges, and allocation and reallocation of positions to classifications, and the determination of an incumbent's status resulting from position reallocations.

149. The hearing officer shall make a decision accompanied by findings of fact and conclusions of law. The decision shall be reviewed by the personnel board on the record and either affirmed, modified or reversed, the personnel board's action shall be subject to review pursuant to Ch. 227 of the Wisconsin Statutes.

[6] The agreement refers to the Personnel Board but subsequent revision of ch. 230, Stats., transferred the hearing review function to the Personnel Commission.

probationary employes to an impartial hearing examiner, reviewable by the Personnel Commission pursuant to sec. 230.45(1)(f).

Dropik asserts that the approved collective bargaining agreement together with sec. 111.91(3), Stats., constitutes express, clear, and unambiguous authority for subject-matter jurisdiction by the Personnel Commission to exercise its discretion to hear an appeal from a discharge of a probationary employe. The circuit court disagreed and construed the agreement, secs. 111.91, 230.28(1) and (5), 230.37(1), and 230.44(1)(c), to provide no authority to the Personnel Commission to hear appeals of the kind in question.

We decline to take the statutory construction route chosen by the circuit court, although we agree with its conclusion that the Personnel Commission did not have subject-matter jurisdiction. We believe that it is indeed arguable whether secs. 111.91(2)(b)1. and (3), Stats., authorize a collective bargaining agreement that accords discretionary appeal rights to discharged state probationary employes. Nonetheless, we think the inquiry with respect to subject-matter jurisdiction is not ended with a determination that the above sections expressly grant jurisdiction or are ambiguous and justify a construction establishing subject-matter jurisdiction, because of the conflict of those sections with sections of ch. 230 and the failure to comply with sec. 111.92(1).[7]

---

[7] The briefs of the parties do not address the applicability of sec. 111.92(1), Stats. At the beginning of oral argument we advised counsel that we were considering the application of that statute to these cases and invited their discussion. We also apprised counsel that we would act favorably upon requests to supply a supplemental memorandum. The applicability of the statute was discussed by counsel in oral argument. No requests to file memoranda were made, but Miller's counsel subsequently filed a memorandum.

The right of state employes to bargain collectively with the state is an act of legislative grace.[8] It is the self-imposed duty of the legislature to act upon tentative collective bargaining agreements negotiated by the executive branch.[9] Section 111.92, Stats., provides an express and restrictive method for collective bargaining agreement approval. If, in the exercise of statutory construction of the agreement and sec. 111.91, it is concluded that the legislature intended to grant the Personnel Commission subject-matter jurisdiction of such appeals, the legislature nonetheless had to comply with its own limiting approval procedure to effect this change. On the other hand, if the legislature has failed to comply with its express approval procedure, one must conclude that the legislature did not intend a change for which it did not expressly provide.

Our view is that the question of subject-matter jurisdiction of the Personnel Commission is determined by sec. 111.92, Stats. We begin our analysis with the observation that the delegation to the Personnel Commission of discretionary authority to hear appeals by discharged probationary employes is in patent and self-evident contradiction to secs. 230.28(1) and (5), 230.37 (1), and 230.44(1) (c), which deny a probationer a discharge appeal.

Section 111.92(1), Stats., requires a tentative agreement negotiated by the State Department of Employment Relations and a certified labor organization to be ratified by the union. The agreement is then required to be submitted to the legislature's Joint Committee on Employment Relations for a public hearing and a recommendation of approval or disapproval. If approved, the Committee "shall introduce in companion bills, to be put

[8] Sec. 111.82, Stats.
[9] Sec. 111.815(1), Stats.

on the calendar, that portion of the tentative agreement which requires legislative implementation, such as . . . any proposed amendments, deletions or additions to existing law." The Committee is also required to accompany the proposed legislation with an informative message of concurrence recommending passage of such legislation without change. "If the legislature does not adopt without change [the proposals of the Committee], the tentative agreement shall be returned to the parties for negotiation."

Neither the 1977–79 agreement applicable to Dropik and Miller, nor the 1975–77 agreement also applicable to Miller was accompanied by subsequently adopted companion bills that in any respect modified the conflicting provisions of ch. 230, Stats., to which we have referred. Although Dropik and Miller contend that the legislative enactments which approved the labor agreement fulfill compliance with sec. 111.92(1), we conclude that the absence of specific companion legislation modifying the conflicting provisions of ch. 230 compels a contrary determination.

Section 111.92(1), Stats., is a clear and unambiguous prohibitive statute restricting approval of tentatively-negotiated legislative changes in existing law to a particular manner, thereby excluding approval of the changes in any other manner. Fairness and certainty in the law is accomplished by requiring specific legislative changes if such changes are intended.

The manner of approval is prescribed in mandatory, peremptory and exclusive terms. Introduction of legislative bills is imperatively required. No discretion in that respect is imposed in the Joint Committee or the legislature if it is to comply with its self-imposed limitations upon the granted power and authority to engage in collective bargaining and enter into negotiated agree-

ments in derogation of the state's sovereignty. In addition to the mandatory terms, the manner of approval negates and prohibits partial approval of an agreement recommended by the joint committee. The plain meaning of the statute is easily capable of literal application.

The legislature has chosen a method for approval of a collective bargaining agreement that assures it will be informed of intended changes in existing law, with the consequent opportunity to consider the merits of the changes in conjunction with its approval of the agreement. Such a procedure is endowed with the virtue of avoidance of complex judicial and administrative statutory construction designed to arrive at legislative intent, and minimizes the prospect of interpretive error. The procedure avoids unfavored implied repeals or amendments, assures that specific legislative acts will control general acts, and also assures statutory harmony.

Dropik claims that the approved labor agreement supersedes the civil service statute, pursuant to sec. 111.93 (3), Stats. That statute is applicable only if the subject matter relates to wages, hours, and conditions of employment. *See also* sec. 111.84 (1) (e), and sec. 111.91 (1). The right to appeal the discharge of a probationary employe is not within those categories.

Dropik and the Personnel Commission claim that sec. 230.44 (1) (d), Stats.,[10] is applicable to Dropik's appeal. That statute permits an appeal to the Personnel Commission of a discharge alleged to be illegal or an abuse of discretion because it relates to the "hiring process." We decline to equate the hiring process by which one's employment is engaged to the firing process by which one is discharged from employment because to do so would

---

[10] Sec. 230.44 (1) (d), Stats., provides:

(d) *Illegal action or abuse of discretion.* A personnel action after certification which is related to the hiring process in the classified service and which is alleged to be illegal or an abuse of discretion may be appealed to the commission.

not employ the common and approved usage (sec. 990.-01(1)) of the term "hiring process."

Construction of sec. 230.44(1)(d), Stats., to include the discharge of an employe as within the hiring process would not eliminate the conflict with the other provisions of ch. 230 that restrict discharge appeals to employes with permanent status. Harmonizing the provisions of ch. 230 which are *in pari materia* would not be accomplished.

We view discharge of a probationary employe as the process by which an employment contract is terminated, not as a process by which the employe is not hired. The hiring process cannot be reasonably construed to embrace the acquisition of permanent status in class. Unclassified employes are hired without achieving the permanent status reserved to the classified service by successful completion of a probationary period. Our legislature has specifically separated the tenure process from the hiring process:

It is the policy of this state to provide for equal employment opportunity by ensuring that all *personnel actions including hire, tenure of term,* and condition or privilege of employment be based on the ability to perform the duties and responsibilities assigned to the particular position without regard to age, race, creed or religion, color, handicap, sex, national origin, ancestry or political affiliation. Sec. 230.01(2), Stats. (Emphasis added.)

We believe it unreasonable to conclude that an employe has not been hired until he has successfully completed a six-month (sec. 230.28(1)(a), Stats.), one-year (sec. 230.28(1)(am)), eighteen-month (sec. 230.28(5)), two-year (sec. 230.28(1)(b)), or three-year (sec. 230.38(1)(b) and (5)) probationary period.

That the hiring has been completed as to a probationer who attains that status is shown by the employe rights accorded to the probationer: (1) to be restored to the

classified service after military leave (sec. 230.32(2)(b), Stats.); (2) accumulation of vacation time (sec. 230.35 (1)'); (3) accumulation of sick leave (sec. 230.35(2)); (4) accumulation of personal holidays (sec. 230.35(4) (d)1. and 2.); (5) enjoyment of compensation; (6) performance of full job responsibilities and duties; (7) entitlement to full pay while called for jury duty; (8) entitlement to worker's compensation (sec. 102.07(1)); and (9) entitlement to unemployment compensation. Eligibility for that wide range of benefits establishes conclusively that permanent employe status is not consummated by completion of the probationary process.

## THE MILLER CASE

Miller's appeal to the Personnel Board originated during the term of the 1975–77 labor agreement and before the revision of the civil service subchapter of ch. 16, Stats., by ch. 196, Laws of 1977. The initial appeal was addressed to the Personnel Board pursuant to secs. 15.101 (3) and 16.05(1) (1975). The subsequent revision of the civil service subchapter provided for transfer of pending appeals to the Personnel Commission as the appeal tribunal.[11] The appeal continued before the Personnel Commission. Although the factual issues in Miller's case involved whether Miller had quit his employment and whether he had been properly terminated by the University, the issue in both cases on this appeal is the subject-matter jurisdiction of the original Personnel Board and the subsequent Personnel Commission. In connection with that issue there is no significant distinction between the Dropik and Miller cases that affects our conclusion of an absence of Personnel Commission subject-matter jurisdiction in both cases.

Miller claims that this appeal was a step in the grievance procedure of the union contract. Section 16.05(7),

---

[11] Sec. 129(5), ch. 196, Laws of 1977.

Stats. (1975), provides that the Personnel Board "may be designated as the final step in a state grievance procedure." As in the Dropik case, such a claim fails because of the failure to amend secs. 16.28(1)(a), 16.05 (1)(e), and 16.22(1)(a) (1975), the predecessor sections to the statutes relied upon in the Dropik case, when ch. 72, Laws of 1975, approved the collective bargaining agreement.

A contention by Miller that the Personnel Board or the successor Personnel Commission has subject-matter jurisdiction by virtue of its appointment as an arbitrator under sec. 111.86, Stats., is also ineffectual for failure to amend the pertinent civil service statutes pursuant to sec. 111.92(1).

Miller also claims that the Personnel Board had subject-matter jurisdiction to investigate his claim pursuant to sec. 16.05(4), Stats. (1975). We concur in the circuit court's view that this proceeding was conducted as a termination appeal of which the Board had no jurisdiction. We therefore need not consider whether an investigatory procedure pursuant to sec. 230.07(4) (1979) should be commenced by the present Personnel Board.

We view as a distinction without a difference the Personnel Commission's claim that it had subject-matter jurisdiction of Miller's claim because the manner in which he was terminated was involved. In the Miller and Dropik cases the employes no longer were employed. Whether Miller quit or was involuntarily terminated, although Dropik was discharged, does not significantly affect the fundamental question of subject-matter jurisdiction to hear appeals from probationers in light of the statutory preclusion of such proceedings.

For the reasons stated, we affirm the judgments of the circuit court.

*By the Court.*—Judgments affirmed.

MOSER, P.J. *(Dissenting)*.

In my view, the plain meaning of secs. 111.91(3) and 230.45(1)(f), Stats., authorizes the personnel commission to hear appeals of discharged probationary employees when the employer and the union have agreed in their labor agreement to permit such appeals. The legislature specifically approved the labor agreement involved in these cases which set up such an appeal procedure. I believe that sec. 230.28(5), permitting a civil service employer to discharge a probationary employee without the right of appeal, is applicable only in the absence of a contrary provision in the legislatively approved labor agreement.

I disagree with the majority's conclusion that the legislature's approval of the labor agreement between the union and the state, without the introduction of additional amending legislation *(see* sec. 111.92(1), Stats.), is fatal to the provision providing a right of appeal for probationary employees, although admittedly, such legislation would have avoided the problem we face here. I think the majority relies on a technicality and reaches the unjust result of voiding a contract provision in effect for four years, agreed to by both the employer and the union, and twice approved by the legislature.

Section 111.91(3), Stats., provides that certain subjects may be bargained at the employer's discretion. It authorizes, without compelling, the employer to reach an agreement with the union "to provide for an impartial hearing officer to hear appeals *on differences arising under actions taken by an employer* under sub. (2)(b)1. and 2." [Emphasis added.] A hearing officer's decisions are reviewable by the personnel commission under sec. 230.45(1)(f). Section 111.91(2)(b)1. includes policies, practices and procedures relating to probationary periods. These sections explicitly authorize an employer and union to set up an appeal procedure regarding em-

ployer's *actions* taken under its probation policy. Discharge surely falls in the realm of actions taken under the employer's probation policy. This is not the same as saying that the employer and union may bargain on, and set up appeal procedures to deal with differences on the establishment of the employer's *policy* on probationary employees. Determinations of policy are reserved exclusively to the employer.

Section 111.91(3), Stats., merely authorizes agreement on a procedure, which includes personnel commission review, for determining only if the *action taken* was arbitrary and capricious. I do not believe that this intrudes upon an employer's autonomy in dealing with probationary employees, first, because the section does not *compel* the right to appeal, but only authorizes the employer to *agree* to it; and second, because it limits its authorization to the test of arbitrary and capricious actions.

Accordingly, I would hold that the statutes grant the personnel commission jurisdiction to hear probation discharge appeals where there is a labor agreement which so provides and that the legislature's failure to amend the civil service statutes was not fatal to the provision in the legislatively approved labor agreement which set up the appeal procedure.

I would therefore reverse the trial court and remand for the trial court's consideration of the merits of both the Miller and Dropik cases.