Ellen KELL, Plaintiff-Appellant,

v.

Rick RAEMISCH, Dane County Sheriff, Jerome Laacke, John and/or Jane Doe, Defendants,

Prudencio OYARBIDE, Mental Health Center of Dane County, Inc., and St. Paul Fire and Marine Insurance Company, Defendants-Respondents.†

Court of Appeals

*No. 93–2861. Submitted on briefs June 8, 1994.—Decided December 15, 1994.*

(Also reported in 528 N.W.2d 13.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Richard J. Auerbach* of *Auerbach & Porter* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Steven J. Caulum, Mary L. McDaniel,* and *David J. Pliner* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Ellen Kell appeals from a summary judgment dismissing her negligence action against the Dane County Mental Health Center (Center), the Center's insurer, St. Paul Fire and Marine Insurance Company, and Prudencio Oyarbide, a clinical specialist at the Center. She seeks compensation for personal injuries she suffered when her boyfriend, Vincent Mott, shot and stabbed her. Mott had been recently released from the Center on Oyarbide's recommendation. Kell claims that Oyarbide and the Center negligently released Mott. The issue is whether Oyarbide is

immune from liability under § 51.15(11), STATS.[1] If he is not, the Center could be liable for the damages resulting from Oyarbide's negligence. *See Arsand v. City of Franklin*, 83 Wis. 2d 40, 45-50, 264 N.W.2d 579, 582-84 (1978) (master can be held liable for physical harm caused by servant).

Section 51.15(1)(a), STATS.,[2] empowers a law enforcement officer or other person authorized to take a child into custody under ch. 48, STATS., to take an individual into custody if he or she believes that the individual is mentally ill, drug dependent or developmentally disabled and evidences dangerousness and mental illness. Section 51.15(11) provides immunity to any individual "acting in accordance with this section" in good faith. We conclude that Oyarbide was not an individual "acting" in accordance with this section.

On April 4, 1989, Kell's boyfriend, Vincent Mott, was arrested for assaulting Kell and the couple's two-month-old child. He was released on bond, conditioned that he not have violent contact with Kell. On May 3, 1989, Mott was again arrested for committing more violent acts against Kell. Once again, Mott was released on bond and ordered to have no contact with Kell; however this time, the court commissioner also

---

[1] Section 51.15(11), STATS., provides:

Any individual acting in accordance with this section is not liable for any actions taken in good faith. The good faith of the individual shall be presumed in any civil action. Any person who asserts that the individual acting in accordance with this section has not acted in good faith has the burden of proving that assertion by evidence that is clear, satisfactory and convincing.

[2] Section 51.15(1)(a), STATS., provides in part:

A law enforcement officer or other person authorized to take a child into custody under ch. 48 may take an individual into custody if the officer or person has cause to believe that such individual is mentally ill, drug dependent or developmentally disabled . . . .

ordered that Mott be held in jail to allow the Center to interview him. The commissioner ordered:

> I'm going to restrict Mr. Mott's travel at least until 5:00 today, that he be held in the jail until that time or until interviewed by somebody from Dane County Mental Health [Center] to determine whether or not they can offer him some services that might assist him in keeping track of his court dates and also assistance in making sure he can follow the conditions of his bail *and to see if a Chapter 51 proceeding might be in order.*

(Emphasis added.)

Oyarbide concluded that although Mott was suffering from an "acute reaction to stress," he was not suffering from a "mental illness" as defined in § 51.15(1), STATS. Moreover, Mott was mentally prepared to end his relationship with Kell. According to Oyarbide, Mott acknowledged that "it would be in everyone's best interest for him to leave . . . Kell[ ] alone . . . ." As a result, Mott was released. Approximately one month later, Mott assaulted and battered Kell, shooting and repeatedly stabbing her.

Kell alleges that Oyarbide was negligent in his evaluation, diagnosis, and release of Mott. The defendants moved for summary judgment, arguing that Oyarbide conducted an assessment of Mott pursuant to the "emergency detention" provisions of ch. 51, STATS., and therefore, is entitled to the "good faith" presumption of § 51.15(11), STATS. The trial court granted defendants' motion. It concluded that Oyarbide "is an 'individual' . . . entitled to the 'good faith' presumption afforded in sec. 51.15(11), Stats., and that he acted in accordance with sec. 51.15, Stats." We disagree.

Whether Oyarbide was an "individual" entitled to the protections of § 51.15(11), STATS., is a question of law which we review *de novo*. *See Board of Regents v. Wisconsin Personnel Comm'n*, 103 Wis. 2d 545, 551, 309 N.W.2d 366, 369 (Ct. App. 1981) (questions of law, including the interpretation and application of a statute, are reviewable by this court *de novo*).

We conclude that § 51.15, STATS., does not apply to this case. Section 51.15 is titled "Emergency detention." Although the title of a statute is not part of the law, it may help in resolving statutory ambiguities. *Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 805-06, 440 N.W.2d 329, 333 (1989). All of the procedures under the statute are geared to the emergency detention of a person. Here, Mott was already in custody when he was interviewed by Oyarbide. According to § 51.15(2), after the law enforcement officer or other authorized person finds cause to believe that the individual he or she has taken into custody is mentally ill, drug dependent or developmentally disabled, and evidences dangerousness, "[t]he law enforcement officer shall transport the individual, or cause him or her to be transported for detention and for treatment *if permitted under sub. (8)* to any of the following facilities . . . ." (Emphasis added.)

Section 51.15(8), STATS., provides in part: "When an individual is detained under this section, the director and staff of the treatment facility may treat the individual during detention, if the individual consents." Thus, the treatment facility may treat the detained individual *only during detention*. The procedure to be followed *after emergency detention* is detailed in subsec. (5). The officer who has taken an individual into custody signs a statement of emergency

detention which details why he or she believes that the conditions for emergency detention are satisfied.[3] That statement must be filed with the court immediately after the individual is taken into custody. The filing of this statement has the same effect as the petition for commitment under § 51.20, STATS. Unless a hearing is held under §§ 51.20(7) or 55.06(11)(b), STATS., the individual may not be detained for more than seventy-two hours, exclusive of Saturdays, Sundays, and holidays. Section 51.15(5).

In this case, Mott was not taken into custody; he was already in custody. If the Center concluded that Mott needed treatment, it would have filed a petition under § 51.20, STATS. That statute provides for a written petition to the court for examination alleging that the individual to be examined exhibits the same characteristics as a person subject to emergency detention under § 51.15, STATS. The court may detain the individual under subsec. (2) until a hearing is held to determine whether the person should be involuntarily committed for treatment.

■■■

We conclude that this case does not involve an emergency detention under § 51.15, STATS., and thus, the immunity granted by subsec. (11) does not apply to Oyarbide. We express no opinion whether Oyarbide

---

[3] Section 51.15(11m), STATS., provides:

Law enforcement agencies shall designate at least one officer authorized to take an individual into custody under this section who shall attend the in-service training on emergency detention and emergency protective placement procedures offered by a county department of community programs under s. 51.42 (3) (ar) 4. d., if the county department of community programs serving the law enforcement agency's jurisdiction offers an in-service training program.

may be immune from liability under another statute or under common-law decisions.

*By the Court.*—Judgment reversed and cause remanded.

EICH, C.J. (*dissenting*). The majority opinion appears to hold that Oyarbide could not have been acting under § 51.15, STATS.—and thus was not entitled to the protections of the immunity provisions of § 51.15(11)—because: (1) § 51.15 deals with "emergency" detention; and (2) Oyarbide did not take Mott into custody because Mott "was already in custody." As a result, the majority concludes that Oyarbide is not immune from liability for his actions under § 51.15(11). I respectfully disagree.

Although Mott was in custody at the time he was interviewed by Oyarbide, the court had ordered his release earlier in the day, subject only to his being interviewed by "somebody from Dane County Mental Health" prior to release in order to determine whether the county could "offer him some services" and, in addition, whether an emergency detention proceeding under ch. 51, STATS., "might be in order."[1]

Oyarbide was on duty that day and Mott was brought to him for an interview. Oyarbide was told that Mott had come from the legal system and was to be interviewed before his release later that afternoon. Oyarbide interviewed Mott for approximately fifty-five minutes and concluded that while Mott was suffering from an "acute reaction to stress," he did not meet the

---

[1] The written minutes of Mott's appearance did not specifically indicate that he was to be interviewed for possible detention, but stated only that he "be held in custody until 5:00 p.m. today for the purpose of being interviewed by Dane Co[unty] Mental Health."

"mental illness" criteria for detention under § 51.15(1), STATS. Oyarbide offered Mott the services and assistance of the mental health center and Mott was released from jail that evening.

As indicated, approximately one month later Mott physically assaulted Kell, injuring her severely, and she sued Oyarbide and the Mental Health Center of Dane County, Inc.,[2] claiming that Oyarbide was negligent in, among other things, authorizing Mott's release instead of instituting emergency commitment proceedings under § 51.15, STATS.

The trial court granted summary judgment dismissing the action, concluding that, because Oyarbide was "the mental health professional . . . [who] decide[d] whether detention [wa]s necessary" under § 51.15, STATS., he was acting "in accordance" with the statute within the meaning of § 51.15(11). I agree with that determination.

Section 51.15(1)(a), STATS., provides that an individual may be "take[n] . . . into custody" by a law enforcement officer, or a person authorized to detain juveniles, if certain conditions are met. Other portions of the statute include other persons in the process, including the "director and staff" of any treatment facility (or the director's "designee"), who are given, among other things, the authority to release detained individuals in certain situations. *See* § 51.15(4), (5), (6), (8), (9), and (10), STATS.

In deposition testimony submitted in connection with his summary judgment motion, Oyarbide testified that in cases where he is called upon to determine whether a person is a proper subject for emergency

---

[2] Kell also named as defendants several members of the Dane County Sheriff's Department and the Dane County Clerk of Courts. Those parties were dismissed from the suit.

detention and his examination leads him to conclude in the affirmative, he drafts the "standard form" documents and gives them to a law enforcement officer who then signs the papers and proceeds to take the subject into physical custody. It is thus Oyarbide who determines whether emergency detention proceedings are to be initiated under § 51.15, STATS., in a particular case, and Kell does not dispute that he plays that role. Indeed, her lawsuit seeks recovery for Oyarbide's actions in that capacity— determining *not* to detain Mott under the statute.[3]

It would be anomalous to read the statute as providing immunity to the person—the law enforcement officer—who takes physical custody of the individual, while rendering the person who decides whether to initiate the proceedings leading up to that action—or, as here, determines not to initiate them—subject to suit for that act. I agree with Oyarbide that the language of § 51.15(11), STATS., indicating that immunity is granted to "[a]ny individual acting in accordance with this section" means what it says. In my opinion, in carrying out the court's order as it was conveyed to him, Oyarbide was evaluating Mott as a subject for emergency detention under § 51.15, and was thus acting in accordance with the section when, after a lengthy interview in which he concluded that the criteria for detention were not present, he authorized Mott's release.

I would thus reject Kell's argument—which the majority adopts—that Oyarbide was not acting under § 51.15, STATS. I would affirm the trial court's decision

---

[3] As indicated above, the gravamen of Kell's complaint is that Oyarbide "failed to . . . *commence a Chapter 51 proceeding* and released [Mott] from custody." (Emphasis added.)

that he was indeed acting under the statute and would affirm its judgment dismissing the action against him.